JORDAN et al. v. MORGAN.

(Court of Civil Appeals of Texas. Texarkana. Jan. 30, 1913.)

1. SALES (§ 389*)—ACTION FOR DAMAGE—FINDINGS—INCONSISTENT FINDINGS.

In an action by a seller of lumber under a contract providing that the lumber should be stacked for drying with strips not exceeding four inches in width, that there must be a distance of five feet between each stack, that the lumber must be stacked so as to give a five-inch flue and each length piled separately, for refusal of the buyer to accept, the jury answered a question whether plaintiff complied with the contract in the affirmative, and answered questions whether the lumber was stacked with strips not exceeding four inches in width, whether there was a distance of five feet between each stack, whether it was so stacked as to give a five-inch flue, and whether each length was piled separately, in the negative. Held, that the findings were not inconsistent; the jury manifestly intending that the contract was complied with except in the particulars specified.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 389.*]

2. SALES (§ 370*) — REFUSAL TO ACCEPT — RIGHT OF ACTION.

In an action for refusal to accept lumber, where the undisputed evidence showed, and the jury found, that the lumber was not stacked for drying as required by the contract, that this made a material difference in its value, and that the buyer had not waived performance, the seller was not entitled to recover for the buyer's refusal to accept.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1085; Dec. Dig. § 370.*]

3. SALES (§ 389*) — REFUSAL TO ACCEPT — FINDINGS—CONSTRUCTION.

At the time a buyer of lumber gave the seller notice to discontinue deliveries, the seller had in his millyard 800,000 feet, of which the buyer subsequently accepted 72,000 feet. In an action for refusal to accept the remainder, the jury found that "not all" of the lumber was stacked for drying as required by the contract of sale. There was no evidence as to the amount in addition to such 72,000 feet that was properly stacked. Held, that the jury's finding would be construed as a finding that only the 72,000 feet was properly stacked.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 389.*]

4. SALES (§ 176*)—BREACH—WAIVER—OPERATION AND EFFECT.

A waiver by a buyer of lumber of one breach of the contract as to the mode of piling or stacking for drying was not a waiver of other and subsequent breaches.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 436–444; Dec. Dig. § 176.*]

5. SALES (§ 370*)—REFUSAL TO ACCEPT—IMPROPER MOTIVE.

Where a seller of lumber failed to perform substantial terms of the contract, he could not recover for a refusal of the buyer to accept, although such refusal was due to a decline in the market price of lumber subsequent to the making of the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1085; Dec. Dig. § 370.*]

Appeal from District Court, Shelby County; R. T. Brown, Special Judge.

Action by W. D. Morgan against J. H. Jordan and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

The Jordan-Sanders Lumber Company, a copartnership, was engaged in the buying and selling of lumber, and owned and operated two planers at Neuville, in Shelby county. W. D. Morgan owned and operated a sawmill about six miles from Neuville. On January 14, 1909, the Jordan-Sanders Lum-

ber Company and W. D. Morgan made and entered into a valid written agreement, by the terms of which Morgan obligated himself to sell and to deliver to the lumber company, at their planers at Neuville, all lumber manufactured thereafter at his mill until July 14, 1909; and the lumber company was to pay Morgan for all the lumber so delivered and accepted by them the sum of $11 per 1,000 feet, payable at the end of each month after delivery and acceptance. It was stipulated in the agreement that the lumber was not to be delivered to the planer until dry, and the lumber company was to order it delivered to the planer when dry and was to have the right to make inspection of the lumber at the point of delivery before acceptance, and all lumber not manufactured according to the specifications and under the stipulations set out should remain the property of Morgan and at his risk at the point of delivery. It was stipulated that said lumber was "to be well manufactured, of correct size and dimensions; to be nice, dry and bright, and to contain no doty heart nor cull lumber; all star and better lumber is to be thoroughly kiln-dried and seasoned, and dry and free from knots, bark and maney edges, and not blued; all air-dried lumber to be stacked with strips not to exceed four inches in width; there must be a distance of five feet between each stack of lumber, and the foundations of said stack must be built so as to have an inch drop per foot, so as to thoroughly drain itself; the lumber must be stacked so as to give a five-inch flue; all No. 1 common lumber to be thoroughly air-dried or kiln-dried before being delivered at either of the planers, * * * and to pile each length separately to itself both at the sawmill and the planer." After the date of the contract, and before April 3, 1909, W. D. Morgan delivered to the lumber company at their planers about 400,000 feet of lumber. This lumber was received by the company and paid for. On April 3, 1909, the lumber company wrote Morgan notifying him to discontinue any more deliveries of lumber at the mill after that date. At the time of this notification Morgan had on his millyard 800,000 feet of lumber, of the market value of $9.20 per 1,000 feet. Thereafter on June 20, 1909, the lumber company accepted and paid for 72,000 of the 800,000 feet, but refused the remainder. Morgan then sold the lumber refused by the lumber company to other parties, and it brought $3 less per 1,000 feet than the contract price. There was no effort made by Morgan to further execute or perform the contract before its expiration in July following. Claiming a wrongful breach of the contract by the lumber company, the appellee sued for damages for the difference between the price the lumber was sold for and the contract price, and the value of lumber that could have been cut by the mill but for the breach. The appellants entered a general denial, and

pleaded, among other things, a failure of compliance by appellee with the terms of the contract as to method and mode of stacking, drying, and assorting the lumber in piles on the millyard. The jury made the findings on special issues that W. D. Morgan failed to comply with the terms of contract in four of the particulars as to the method and mode stipulated in which the lumber on the millyard which was refused by the lumber company should be stacked, dried, and assorted in piles for drying out purposes, and that the failure to comply with such stipulated terms worked the substantial difference in value of the lumber of 10 per cent. per 1,000 feet less than the contract price, and 50 cents per 1,000 feet extra to separate the promiscuous lengths into piles of the same length. The testimony establishes the findings of the jury of nonperformance by appellee of the terms of contract as to stacking and piling the lumber on the millyard.

J. M. Sanders, D. M. Short & Sons, and Stephenson & Stephenson, all of Center, for appellants. Carter & Walker and Davis & Davis, all of Center, for appellee.

LEVY, J. (after stating the facts as above). The rights of the parties here are to be measured entirely by the terms of a written contract, sued upon by appellee and admitted to have been executed by appellants. According to the terms of the contract, appellee was to manufacture the lumber from his own logs and to stack and pile it on his own millyard so that it could seasonably dry out before delivery to appellants at their planer, about six miles distant from the mill. The lumber was not to be delivered to appellants, or to be accepted by them after being cut, until it was dried out by the methods agreed upon. The method and mode to be used by appellee in drying out the lumber after taking it from the saw were stipulated to be as follows: "Air-dried lumber to be stacked with strips not to exceed 4 inches in width; there must be a distance of 5 feet between each stack of lumber, and the foundation of each stack must be built so as to have an inch drop per foot so as to thoroughly drain itself. The lumber must be stacked so as to give a five-inch flue. * * * Each length to be piled separately by itself." It was conclusively shown that it takes about 60 days for lumber taken fresh cut and green from the saw to dry out, and that by following the stipulated way of drying it a better class of lumber for use and a more valuable grade in the market was obtained. As the burden was on appellee to show a compliance with these terms of contract incumbent on him to perform, the findings of the jury in respect thereto determine the appeal.

[1] The court submitted to the jury the following issue: "Did the plaintiff, W. D. Morgan, comply with the contract in evidence? If not, give a detailed statement of

the provisions he failed to comply with, if any." And at the request of appellants the court further submitted to the jury the following questions, as material here, for answer: "(2) Was the lumber cut by W. D. Morgan well manufactured? (3) Was the lumber cut by plaintiff correct sizes?" "(7) Was all air-dried lumber stacked with strips not exceeding 4 inches in width? (8) Was there a distance of 5 feet between each stack of lumber? (9) Was the foundation of each stack built so as to have an inch drop per foot? (10) Was the lumber stacked so as to give a 5-inch flue?" "(13) Did the plaintiff pile each length of lumber separately to itself both at sawmill and planer?" Each of the several questions was in reference to the stipulations of the contract to be performed by appellee, and an issue made by the evidence. The jury made the answer of "yes" to the question submitted by the court, and answered the questions requested by appellants, respectively, as follows: (2) "Yes." (3) "Yes." (7) "Not all." (8) "No." (9) "Yes." (10) "Not all." (13) "No." By considering the first question above in connection with the succeeding questions, in order to properly construe the findings of the jury there is no conflict or inconsistency of findings by the jury. By answering the first part of the first question "Yes," and then later following up that answer by specific answers in respect to the special provisions complied with and the special provisions failed to be complied with, as done, it was manifestly intended by the jury to make the finding of fact that appellee did comply with his contract except in the four particulars specified.

[2] As so construed and given effect, the verdict is consistent and in accordance with the undisputed evidence of the witnesses. The testimony, as seen, admittedly shows, as found by the jury, a failure on appellee's part to stack the lumber with strips 4 inches wide, to pile separately the different lengths of lumber, and to have the piles 5 feet apart. The appellee testified as follows: "I would not say that they were stacked with strips not to exceed 4 inches in width. We stacked the 1x4's all together with strips 4 inches wide. After working off the old stacks, we commenced stacking the stacks 5 feet. * * * At the mill the lumber was not all piled each length separate to itself. It was in everything except 2x4, 1x4, and 1x6. It was not stacked separately because I didn't have the room; I didn't have the ground. I had all the ground I could get at the place." He further says: "To come right down to the scratch, I don't expect I ever did carry out any single paragraph of the contract." McKee, who after April 3d operated the mill for Morgan, testified: "When I went down there to the yard, I found different lengths of lumber stacked together, that is, some of it, and some of it stacked all right. * * *

I found some of the lumber there stacked with wider than 4-inch strips. * * * I found some of the stacks of lumber closer together than 5 feet. I think the fall of one inch to the foot was all right. * * * Part of the lumber was stacked so as to give a 5-inch flue, and part of it was not." Jordan, the manager of the lumber company, testified: "I went down to the millyard and found, I suppose, 700,000 or 800,000 feet of lumber on the millyard. I found about 50,000 or 60,000 feet of B and better out of the 700,000 or 800,000 feet. I went out there a few days after the receivers took charge of it, and they hadn't cut over two or three days and hadn't dried any lumber. I looked over the stock of lumber there. I found plenty of lumber stacked with strips more than 5 inches wide; it was stacked with strips of its own width; stacks of 1x12's would be cross-stripped with 1x12's, and 1x6's would be stripped with 1x6's. We did not find the flues to be 5 inches. I found different lengths in the same stack, the greater portion of it that way. There might have been a few stacks that were stacked with even lengths. I could not say that 1x12-20's were stacked with 1x12-20, but in some stacks the 18 and 20's were stacked together, and 16 and 14's and 14 and 12's were stacked together in the same pile." By further findings of the jury, and in accordance with the undisputed testimony, the promiscuous piling together of the different lengths of lumber entailed an extra cost of 50 cents per 1,000 feet to separate them into piles of the same length, and a failure to stack the lumber while green with strips not exceeding 4 inches in width worked a difference in value of the lumber of 10 per cent. less than the contract price. So by the verdict of the jury and under the evidence there is established the fact of nonperformance by appellee of material and valuable stipulations in the contract with respect to stacking and piling the lumber at the millyard. It is not doubted that if appellee failed to comply with the substantial requirements of his obligation as to drying the lumber and stacking and piling it at the millyard, and the lumber company did not waive the performance by appellee of these methods so stipulated, then appellee has not shown himself entitled to recover of appellants any damages by reason of their refusal to take the lumber on the millyard.

[3] While the jury made answer that "not all" of the air-dried lumber was stacked with strips not exceeding four inches in width, and that "not all" of the lumber was stacked so as to give a 5-inch flue, still by the further evidence in the record giving appellee the most favorable view of it, it could only be said that 72,000 feet of the 800,000 feet on the millyard was piled and stacked in accordance with the contract, and no other finding is warranted. If there be doubt as to

72,000 feet being a part of the 800,000, then appellee has not furnished any evidence, as he was bound to do, of the amount that was in compliance with the contract.

By the undisputed evidence it is shown as a fact that on April 3, 1909, the admitted time appellants by letter gave notice to appellee to discontinue any more deliveries of lumber to the planer, appellee had on his millyard 800,000 feet of lumber. After that date, and before suit, Jordan, the manager of the lumber company, went down to the millyard, and he and McKee, who was in charge of the mill for appellee, looked over the stacking and piling, and appellants accepted only 72,000 feet of the same as being in accordance with the terms of the contract. As appellee offered no evidence at variance with this, it must be concluded as a fact that the balance of the lumber was not stacked and piled as stipulated it should be done, and that the verdict of the jury had reference to the 72,000 feet, and no more, as being within the terms of contract. As the payment by the lumber company to appellee for the lumber delivered and accepted at the planer and for the 72,000 feet accepted at the millyard legally operated to relieve the lumber company of any liability for such lumber, it would appear in this record that the controversy between the parties must be solely in reference to the balance of the lumber on hand at the millyard refused to be taken by appellants. There is no finding by the jury of a waiver of performance of the stipulations by appellants, and a finding to that effect is not warranted by the evidence. It is an undisputed fact, and true, that appellants never saw the lumber at the millyard, nor had information of the manner in which appellee was stacking and piling it at the mill, at any time before the date of April 3, 1909, and that after seeing it and knowing how it was stacked and piled they refused to accept any but 72,000 feet of the 800,000 feet as being within the terms of contract.

[4] It is true that appellants before April 3d received lumber at the planer. But a waiver of one breach does not amount to a waiver of other and subsequent breaches. 3 Page on Contracts, § 1496. It follows, we think, that on the findings of the jury and the established facts of the case judgment should have been entered for appellants, and that the assignment complaining of the refusal of the court to enter judgment for appellants on the findings of the jury should be sustained.

[5] Much stress has been placed on the motive of appellants in refusing to take the lumber being a decline in the market price at the time. If, as here, there is shown the fact of nonperformance of substantial terms of contract by appellee, he is legally in default and cannot recover; and the secret motive of appellants, if there be any, does not legally justify the default of appellee and could be given no such legal effect.

The judgment of the district court must be reversed, and judgment here rendered on the verdict of the jury that appellee take nothing by the suit, and that appellants recover all costs of the court below and of this court.