ABILENE GAS & ELECTRIC CO. v. THOMAS et al. (No. 965.)

(Court of Civil Appeals of Texas. El Paso. April 24, 1919.)

1. ACTION ⬮⬭53(2) — JUDGMENT ⬮⬭597 — SEPARATE SUITS—NEGLIGENCE.

A wife injured by contact with an electric wire on going to the aid of her husband who had come in contact therewith and who died from his injury, can maintain a suit for her own injuries, and a separate suit for his death, and a judgment in the first is not a bar to the second, though arising out of the same negligence.

2. ESTOPPEL ⬮⬭68(4) — INCONSISTENT CONDUCT.

Where defendant excepted specifically to petition as containing a misjoinder of causes of action, and the plaintiff amended so as to obviate the objection, and later filed a separate suit on cause of action eliminated by amendment, defendant is estopped to set up that the judgment in favor of plaintiff in the second suit is a bar to the first.

**3. ELECTRICITY ⬿16(3)—CIRCUIT BREAKER—NECESSITY.**

Maintaining electric light and power plant, transmitting 33,000 volts over wire constructed over public road without ammeter, circuit breaker, or ground detector, is negligence, little, if any, less than criminal, and the operators must be held to have anticipated severe shock or death from breaking of wire without shutting off the current.

**4. ELECTRICITY ⬿18(1)—ACTION FOR DEATH —CONTRIBUTORY NEGLIGENCE.**

In view of deceased's previous experience of no evil effects from cutting broken live wire in saving his cow, it cannot be said as a matter of law that he was negligent in subsequently attempting to save his horse, which also came in contact with the wire.

**5. ELECTRICITY ⬿19(8)—SAFETY DEVICES—EFFECTIVENESS—QUESTION FOR JURY.**

In action for damages for alleged negligent killing of deceased, who came in contact with defendant's live broken wire, whether the installation of a fuse on the switchboard would have the same effect as a circuit breaker *held* for the jury.

**6. APPEAL AND ERROR ⬿1068(5)—FAILURE TO INSTRUCT—HARMLESS ERROR.**

Jury having found upon independent issues that defendant was negligent in failing to make proper inspection of its wires and remedying danger resulting in death of plaintiff's intestate, refusal to instruct with reference to whether installation of fuse on switchboard would have same effect as circuit breaker, was not reversible error.

**7. TRIAL ⬿352(1)—SUBMISSION OF SPECIAL ISSUES—FORM.**

In action for damages for death of plaintiff's intestate due to contact with defendant's live wire, special issue, submitting question whether defendant could have discovered and remedied danger, *held* not subject to objection that it induced jury to believe that it was defendant's duty to prevent the accident at all hazards.

**8. TRIAL ⬿352(1)—SUBMISSION OF SPECIAL ISSUES—FORM.**

In action for damages for death of plaintiff's intestate due to contact with defendant's live wire, special issue, submitting question as to negligence in failing to make inspection, *held* not subject to objection that it left the jury to conclude that it was negligence for defendant to permit the accident, and that it placed a greater burden on defendant in the matter of inspecting its line than the law required.

**9. ELECTRICITY ⬿19(10) — BROKEN WIRE —FAILURE TO DISCOVER—NEGLIGENCE.**

In action for damages for death of plaintiff's intestate, due to contact with defendant's live wire, evidence *held* to raise issue as to defendant's negligence, with respect to failure to inspect line and discover broken wire.

Error from District Court, Taylor County; Joe Burkett, Judge.

Suit by Mattie Thomas, for herself and as next friend of her minor children, against the Abilene Gas & Electric Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

J. M. Wagstaff and Cunningham & Oliver, all of Abilene, for plaintiff in error.

Dallas Scarborough, of Abilene, Preston Martin, of Weatherford, and R. L. Carlock, Jr., of Ft. Worth, for defendants in error.

HIGGINS, J. Mattie Thomas, for herself and as next friend for her minor children, brought this suit against appellant to recover damages resulting from an alleged negligent killing of A. J. Thomas, the husband of said Mattie Thomas and father of the minor children.

The circumstances surrounding the death of A. J. Thomas are disclosed by the opinion rendered in Abilene Gas & Electric Co. v. Thomas, 198 S. W. 1028. The statement there made is here adopted and is as follows:

The evidence shows that the plaintiff in error had constructed and begun to operate a high-tension electric wire from Abilene to Merkel, on September 3, 1915. The line carried from 33,000 to 35,000 volts of electricity. The wires were suspended upon poles 150 feet apart. Witnesses who testified in behalf of plaintiff in error indicated a proper installation and construction of the line with suitable material, with exception to be hereinafter noted. On the night of the day mentioned, to wit, September 3d, the line was tested and the current turned on, and no defect in the line was apparent between Merkel and Abilene. On that night, however, Mrs. Mattie Thomas, together with her husband and a son and daughter, camped at Elm creek about four miles west of Abilene on their way to Merkel. During the night, about 4 o'clock a. m. the husband and wife were awakened by a "popping," "sizzling" noise, which, on the following morning, was found to proceed from a broken wire of the electric line. The family had camped near the side of the road convenient to a watering place in Elm creek, and the broken line was near the camping place. The agitation of the line had ceased when discovered in the morning, but soon afterwards a milch cow accompanying the Thomases crossed over the line of the broken wire and was shocked so that she fell to the ground, and Mr. Thomas called for an axe, with which he chopped the wire in two, and thus released the cow. Later in the morning, after the preparation and consumption of the morning meal, the son and daughter each rode a horse to and from the watering place along some paths which extended on either side of one of the poles from which the broken wire depended. The little son passed upon one side and the daughter upon the other. The wire at this time was hanging

down towards the ground without agitation or noise, and neither the son nor the daughter nor the horses ridden by them were injured. A few' minutes thereafter Mr. Thomas, who had gone to the watering place to drive one of the work horses up, also came along one of the same paths. The boy and his mother, according to their testimony, were looking at him at the time. Mr. Thomas had a stick in his hand. As the horse came opposite the post from which the wire extended it was seen to strike the horse on the shoulder, producing a flash of fire, and resulting in the immediate fall and death of the horse. Mr. Thomas, by the testimony referred to, was seen to strike at the wire, either in an effort to knock the wire from his horse, or to ward it away from his own person. However this was, the wire flew from the horse and struck Mr. Thomas, who likewise instantly fell dead to the ground.

The case was tried before a jury and submitted upon special issues. The issues and answers are as follows:

"No. 1. Was it, or not, negligence on the part of the defendant not to have installed in its power plant, on its line between Abilene and Merkel, at and prior to the time of the happening of the accident to the deceased, an instrumentality or device, testified about by the witnesses, known as an automatic circuit breaker? Answer, Yes.

"No. 2. If there had been an automatic circuit breaker in use on its line or at its power house at and just prior to said accident, would the said accident have occurred to the deceased? Answer, No.

"No. 3. State whether or not the absence of an automatic circuit breaker on the defendant's line proximately contributed to cause the accident to occur to the deceased. Answer, Yes.

"No. 4. Could the defendant, in the exercise of ordinary care, have discovered that the wire on its line had broken near where the deceased had camped in time to have remedied and removed the said danger before the accident occurred to the said Thomas? Answer, Yes.

"No. 5. If you have answered 'Yes' in reply to the preceding special issue, then answer, Was it, or not, negligence on the part of the defendant to fail to make said inspection? Answer, Yes.

"No. 6. If you have answered 'Yes' in reply to the preceding two special issues, then state whether the failure, on the part of the defendant, to make such inspection, if you have found there was a failure, proximately contributed to cause the said accident to occur. Answer, Yes.

"No. 7. Was the deceased, at and just before the happening of the said accident to him, guilty of contributory negligence, in approaching or putting himself in a position to receive a shock from the broken electric wire of the defendant, at and just before the said accident occurred? Answer, No."

The jury further assessed the damages at $8,000, and apportioned same between the mother and children. Judgment was accordingly rendered.

## Opinion.

Plaintiff in error by its first assignment complains of the overruling of a plea in abatement interposed by it. The pertinent facts in connection with this plea are as follows: The present suit is numbered 3553. In the original petition Mrs. Thomas sought to recover for herself and children the sum of $55,000 as damages sustained by them through the negligent killing of her husband and for herself, the further sum of $10,000 damages for personal injuries sustained by her in coming in contact with the broken line when she went to her husband's aid and dragged his body out of danger.

In the original answer filed by defendant a special exception was leveled against the petition as follows:

"Defendant further excepts specially to the plaintiff's petition for the reason that it contains a misjoinder of causes of action in this: The plaintiff seeks to recover for injuries to her husband which resulted in his death, and also seeks to recover for alleged injuries to her personally, the petition showing upon its face that the acts for which she seeks to recover for the death of her husband and the acts for which she seeks to recover for injuries to herself are different transactions, and cannot in law be joined in the same suit."

This exception, it seems, was never formally presented to and acted upon by the court, but when it came to the attention of the attorney for plaintiffs he discussed the same with the trial court, and, being of the opinion that the exception was well taken, obtained leave to amend, and filed an amended petition by which recovery by Mrs. Thomas was sought only for the damages caused by the death of her husband. She then filed another suit, No. 3641, wherein she sought to recover the damages which she had sustained by reason of her own personal injuries. Cause No. 3641 was prosecuted to a successful conclusion, she having recovered damages in the sum of $1,000, which was affirmed on appeal. 198 S. W. 1028.

[1, 2] Plaintiff in error asserts that the proceedings in cause No. 3641 preclude the maintenance by Mrs. Thomas of the present suit to recover the damages which she has sustained by the death of the husband, and that the plea in abatement should have been sustained; this proposition being presented:

"Where a plaintiff institutes a suit against a defendant on account of alleged acts of negligence, and divides his damages and seeks to recover therein only a portion of same, which suit he prosecutes to judgment, he cannot in a separate suit recover the remainder, or another portion of his damages, arising by reason of the same acts of negligence or same tort that is alleged in the first suit."

The authorities cited are inapplicable. They refer to cases where the cause of action was indivisible, and simply support the rec-

ognized rule that a plaintiff cannot split his cause of action and divide it up into more than one suit. While both of the claims of Mrs. Thomas arose out of the same negligence of the defendant, yet her individual cause of action for her own personal injuries was divisible and separable from her other cause of action which, jointly with her children, she possessed for the damages arising from the death of the husband and father.

In Freeman v. Harrison, 143 S. W. 686, it was said:

"The right of a minor child sustaining a personal injury negligently inflicted to sue therefor and the right of father to sue are distinct, and a separate suit on behalf of each may be prosecuted."

In Ford v. Southern Springs Land Co., 159 S. W. 876, it was said:

"If the right of action is in one person only, others cannot be joined with him as plaintiffs, the essence of the rights to join parties plaintiff being mutuality of interest existing as to both subject-matter and remedy."

See, also, 23 Cyc. 424; Slaughter v. American, etc., 150 S. W. 224; Johnson v. Seattle, etc., 39 Wash. 211, 81 Pac. 705.

Under the rule announced in the authorities mentioned, Mrs. Thomas had the right to maintain separate suits, and for this reason the plea was properly overruled. But, if this be not correct, then plaintiff in error is estopped from objecting to her doing so by its action in making the special exception quoted above. By that exception it objected to the prosecution of the two claims in this suit, and by the exception plaintiff's counsel was led to do the very thing of which complaint is now made. By its own conduct it is estopped from complaining.

[3] Other assignments assert that there is no evidence to support the findings of negligence.

It is undisputed that at the time of the occurrence of the matter under consideration, plaintiff in error had not installed in its generating plant at Abilene, or elsewhere, along its line, an automatic circuit breaker or ground detector. There is an abundance of evidence that if they had been installed the circuit breaker would have broken the current of electricity, and the ground detector would have apprised those in charge of the plant that the wire was broken, and grounded. Upon evidence not as strong as here presented, Chief Judge Conner, in the appeal from the judgment rendered in cause No. 3641 (198 S. W. 1027), said:

"To so maintain a plant of the kind without these instruments, and generate and transmit over a wire extending along a public road a 33,000 voltage of electricity, or any other voltage of current capable of producing instant death, constitutes, in our opinion, negligence of a character little less, if any, than criminal. Other evidence shows that ground detectors and circuit breakers are, and have been for many years, in constant use in the electrical plants of the country, and those charged with the responsibility of operating plaintiff in error's plant must be held to have anticipated results such as shown in this case."

In this holding we concur.

[4] As to the issue of contributory negligence on the part of deceased, the evidence amply supports the jury's finding. The testimony shows that a milch cow became entangled in the live wire, and that deceased severed the wire with an axe and saved the cow. Subsequently he was driving a horse, which also came in contact with the wire, and, while attempting to save the horse, he came likewise in contact with the wire and was killed. In view of his previous experience of no evil effects from cutting the wire in saving his cow, it cannot be said at a matter of law that the deceased was negligent in his conduct, in attempting to save his horse.

[5, 6] Error is also assigned to the refusal of two special charges, which read as follows:

"No. 3. If you believe from the evidence that defendant had a fuse on the switchboard which served all purposes of an automatic circuit breaker, and that it was properly installed and in good working order, you will not find defendant negligent in not having an automatic circuit breaker."

"No. 6. If you believe from the evidence that there was only a charging current on the line, and that the defendant's wire broke, and that this did not create an overload on the line, you will not find defendant negligent in not having an automatic switch or circuit breaker."

Plaintiff in error adduced evidence to show that it had a fuse on its switchboard which served the purpose of the automatic circuit breaker, and that it was properly installed and in good working order. As has been indicated, there was an abundance of evidence offered on the part of the defendants in error to the effect that if an automatic circuit breaker had been properly installed its operation would have been to instantly break the current when the line parted or became grounded. It is undisputed that, as a matter of fact, the fuse which plaintiff in error had at its switchboard did not operate to cut out the current and have the effect that the automatic circuit breaker would have had as testified to by witnesses for the defendants in error. In this state of the record it was therefore an issue of fact for the jury to determine whether or not the installation of the fuse would have the same effect as an automatic circuit breaker, and it would therefore have been error to have peremptorily instructed to find for the plaintiff in error upon the issues of negligence in respect to the failure to install such circuit breaker. The same observations apply to charge No. 6,

and the evidence would have authorized the jury to disbelieve the testimony offered by the plaintiff in error upon which this last charge was predicated. Both of these charges were peremptory instructions to find against an issue of negligence, and were properly refused for the reason that in the state of the evidence peremptory instructions of the nature indicated were not authorized. But if it should be conceded that they should have been given, the refusal thereof presents no reversible error, for the reason that the judgment is supported by the findings of the jury Nos. 4 and 5, upon the independent issue of negligence upon the part of the plaintiff in error in failing to make the proper inspection of its wires and discovering and remedying the danger occasioned by its breaking.

[7, 8] The eighth assignment complains of the manner in which special issue No. 4 was submitted, this proposition being urged:

"The special issue No. 4, complained of in this assignment, is submitted in such manner as to permit and induce the jury to believe that it was the duty of the defendant to prevent the accident to the deceased at all hazards, which is more than the law requires; the defendant, at most, being only required to exercise ordinary care to prevent the accident, taking into consideration the dangerous fluid it was transmitting over its line."

The ninth assignment complains of the manner of submission of issue No. 5, this proposition being submitted:

"The issue as submitted left the jury to conclude that it was negligence for the defendant to permit an accident to occur whereby the deceased could be killed or injured, and therefore placed a greater burden on the defendant in the matter of inspecting its line than the law required, which was only the exercise of ordinary care in such matters."

We do not regard the form of submission in these issues subject to the objections urged; upon the contrary, issue No. 4 plainly imposes upon the defendant only the exercise of ordinary care. There is nothing in the language used which would induce the jury to believe that it was the duty of the defendant to prevent the accident at all hazards.

As to issue No. 5, it is not regarded as subject to the objection indicated in the proposition; on the contrary, it plainly left it to the jury to determine whether or not the failure to inspect constituted negligence. The court gave a proper instruction of the meaning of the term "negligence." Another objection urged to the fifth issue is that it permitted the jury to believe that the defendant was negligent from the occurrence of the accident itself. We do not regard the language in which the issue was submitted as subject to this objection, but, on the contrary, called simply for a finding as to negligence vel non, in failing to inspect.

[9] Another proposition submitted under the assignments complaining of issues 4 and 5 is that such issues should not have been submitted for the reason that the evidence raised no issue of negligence in this respect. We cannot concur in the view that this issue was not raised. The testimony discloses that the line in question ran along and upon a public highway leading from Abilene to Merkel, a distance of 18 miles. The line had just been completed and the power turned on for the first time on the evening preceding the death of Thomas. The line was heavily charged with a deadly electric current carrying many thousand volts of electricity. The current had been turned into this line without the installation of safety appliances, which there was evidence to show should have been installed for the purpose of detecting the broken line and rendering the same harmless. Plaintiff in error apparently recognized that some degree of care should be exercised in inspecting the line, for it is shown by it that one of its employés started on a tour of inspection, going from Abilene to Merkel, reaching the latter place about 8 p. m. About 12 o'clock he returned to Abilene, riding in a car and observing the line as he rode. No further inspection was made, and the wire broke about 4 o'clock in the morning, and this fact remained undiscovered until after Thomas met his death, about 8 o'clock in the morning. Under the circumstances it is believed that the issue of negligence was raised with respect to the failure to inspect the line and discover the broken wire. Plaintiff in error having placed upon a public highway an electric line, heavily charged with electricity, it owed a very high degree of care to travelers upon that highway to see that this line should not become an object dangerous to them, and the jury was warranted in finding that it owed the duty of more careful inspection of the line than it made, and that it was negligent in failing so to do. Telephone Co. v. Thomas, 45 Tex. Civ. App. 20, 99 S. W. 879.

Finding no error, the judgment is affirmed.