**GRAHAM v. HINES, Agent, et al.\***    (No. 8104.)

(Court of Civil Appeals of Texas. Galveston. March 24, 1922. Rehearing Denied May 4, 1922.)

**1. Trial ⬤349(1)—Court required to reconcile conflicts in answers on special issues.**

It is the court's duty to reconcile apparent conflicts in the answers on special issues if it can be reasonably done in the light of the pleadings and the evidence.

**2. Railroads ⬤352 — Findings as to accident at crossing held not contradictory.**

Special findings that plaintiff failed to reduce the speed of his motorcycle to six miles an hour, though his view of defendant's track was obstructed, and that such failure was a proximate cause of the collision, and that he could have avoided the collision after he discovered the approach of the train by the exercise of ordinary care, *held* not to entitle defendant to judgment in view of other findings that plaintiff was not going at an unlawful speed, that up to the time of his discovery of approaching train he was acting as an ordinarily prudent person, that on discovering the train he became so frightened that he was incapable of prudent action, that negligence of defendant was reasonably calculated to produce such fright in the mind of a person of ordinary prudence, and that under the circumstances he did exercise the degree of care of a person of ordinary prudence; the findings not being contradictory, but susceptible of construction that plaintiff exercised the proper care until terrorized.

**3. Railroads ⬤334 — Frightened motorcycle rider held not negligent.**

Where motorcycle driver was acting with proper care in approach of track at crossing until he discovered approach of train, and became so frightened and terrorized on discovery of train by reason of the railroad's negligence that he was incapable of rational and prudent action with reference to avoiding the collision, his failure to exercise ordinary care under the circumstances did not preclude recovery for injuries.

**4. Negligence ⬤72 — Acts during fright not contributory negligence.**

No person will be held responsible for his acts or omissions which occur when, through no fault of his own, his mind is in such a state of fright or terror as to render him incapable of acting with ordinary care and prudence.

**5. Criminal law ⬤13—Motor vehicle law limiting speed at obstructed crossing held void as penal statute.**

Vernon's Ann. Pen. Code Supp. 1918, art. 820*l*, making a person driving a motor vehicle or motorcycle toward an intersection of a public street or highway with railroad tracks, "where the view of the said crossing is obscured either wholly or partially," who fails to reduce the speed of the vehicle not to exceed 6 miles per hour at some point not nearer than 30 feet of such track, unless there are flagmen

---

⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

\*Writ of error refused May 31, 1922.

or gates showing the way to be clear, guilty of misdemeanor, *held* void for uncertainty.

**6. Criminal law** ⊜⇒13 — **Statute must define with certainty the act or omission denounced.**

In order to constitute a crime, the act condemned must be defined with such certainty that the citizen is able to know in advance from the written statute what is the act or omission which is made criminal.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Suit by J. A. Graham against Walker D. Hines, Agent, and others. Judgment for defendants, and plaintiff appeals. Reversed and rendered.

Woods, King & John, of Houston, for appellant.

Andrews, Streetman, Logue & Mobley, W. L. Cook, and Palmer Bradley, all of Houston, for appellees.

PLEASANTS, C. J. This is a suit by appellant against the appellee to recover damages resulting from the death of his wife and child, and for personal injuries to himself, which it is alleged were caused by the negligent operation of a train on the railroad of the Beaumont, Sour Lake & Western Railway Company, which was then and there being operated by the Director General of Railways for the United States government, the appellee, as the agent of the government, having been, under the act of Congress terminating government control of railways (41 Stat. 456), substituted for the original defendant.

The petition alleges in substance, that plaintiff, on July 13, 1918, was driving a motorcycle to which was attached a sidecar in which his wife and infant daughter were seated, and that at the crossing of the Beaumont, Sour Lake & Western Railroad on Runnels street, in the city of Houston, his wife and baby were killed and plaintiff himself was injured, by reason of the negligence of the agents and servants of the Director General who were operating a passenger train on said railroad.

The allegations of negligence contained in the petition are as follows:

(a) That the duly authorized servants and employés of the defendant in charge of the train in question "carelessly and negligently collided with the plaintiff and wife, daughter, and motorcycle and side car attached thereto, with great force and violence," and that the negligence consisted of details later specified.

(b) That there was negligence in failing to maintain a proper and careful lookout.

(c) That there was negligence in failing to give legal, proper, and customary warning signals by blowing the whistle and continual-ly ringing the bell of the locomotive 80 rods before reaching the crossing.

(d) That there was negligence in running through the city of Houston and upon and across the street in question "at a rate of speed, to wit, 35 miles per hour, and dangerous to plaintiff and others who were and might be then and there crossing said railroad track and to any other persons using said street and crossing and about to cross its track and in violation of the ordinance of the city of Houston."

(e) That there was negligence in failing to maintain proper control over the motive and propelling power of said train while going through the city of Houston and over and across its streets, and especially while approaching and crossing said Runnels street.

(f) That there was negligence in failing, after discovering the perilous position of plaintiff and his wife and child, to then use the means at hand to warn them and to avoid injuring them.

(g) That there was negligence in failing to maintain at the Runnels street crossing a watchman or signal device or bell to give warning of the approach of trains and when it was safe and unsafe to cross said railroad track.

(h) That there was negligence in placing upon a switch track north of and adjacent to the main line track a long line of box cars extending from the street line eastward from said crossing, thereby obstructing the view of said main line track eastward from said crossing to any person approaching from a southerly direction on said street.

(i) That there was negligence in running and operating the train at said time and place, it being then after sunset and partially dark, without having the headlight on the locomotive of said train lighted.

Paragraph VII of the petition elaborates the grounds of negligence above mentioned, relative to the duty to maintain a lookout and to give proper signals and to maintain proper control over the motor power and to have a watchman or signal device at the crossing.

Paragraph VIII again deals with the alleged rate of speed and uses the following language:

"That the said officers, agents, and employés in charge of said engine and cars were operating and running the same at a great rate of speed, to wit, about 35 miles per hour, and that said rate of speed was unlawful and contrary and in violation of the Revised Code of Ordinances of the City of Houston for the year 1914, and being section 1022 of chapter 35 of said ordinances, and under said ordinances it is unlawful for an engineer or other person in charge of a locomotive or train to run or drive the same within the corporate limits of the city of Houston at a greater rate of speed than 6 miles per hour."

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

This paragraph further alleges:

"That said engineer in charge of said locomotive and train did not have said locomotive and train under the proper control, and the control that an ordinarily prudent man would have had under the circumstances and could not control the same, and the running of said engine and cars at such great and excessive speed, namely, about 35 miles per hour, and without any signals, in such careless and negligent manner, was unlawful and in violation of the acts of the Code of Ordinances of the City of Houston, as above set out, and that said engine and cars and train running at such great speed came upon plaintiff at said time and place with such great suddenness, and thereby put him in great fear of safety for his life and the lives of his said wife and child, that if he did, or omitted to do, anything that would have avoided the collision, such act of omission or commission was due to the great fear he was under, brought about by said negligence of those operating said train, and he is not, in law, responsible therefor."

In setting out the details of the collision, plaintiff pleaded as follows:

"That plaintiff, approaching the said crossing on Runnels street, going in a southerly direction, when within approximately 45 feet of said main line crossing, reduced the speed of his motorcycle to 8 or 10 miles per hour, intending to further reduce the speed of said motorcycle in making said crossing; that when at a point about 40 feet from the main line crossing plaintiff first became aware of the approach of a passenger train coming from the eastward towards said crossing. The said train when first seen by plaintiff was just emerging from behind the aforesaid box cars placed on said switch track, and was then and there being run at an excessive rate of speed, to wit, at the rate of about 35 miles per hour, and the bell on the locomotive of said train was not being rung, nor had any whistle been sounded for said crossing, and the said train, which came puffing and running at said excessive rate of speed, came suddenly and without warning into plaintiff's view as it emerged from behind said box cars; that said train, by reason of the negligence of the servants and employés of the railroad company operating same in failing to give any warning of the approach thereof, and by reason of the negligence of the defendant in failing to have a watchman stationed at said crossing to give warning of the approach of said train, thus came suddenly and unexpectedly into the view of plaintiff when he was at a point approximately 40 feet from the crossing as aforesaid, thereby causing plaintiff to become excited and alarmed for the safety of himself and for the safety of his wife and child, who were riding with him; that, acting upon the impulse of the moment and influenced and actuated by the fear and excitement occasioned by the position of sudden and imminent peril which the near approach of said rapidly moving train suddenly placed him in, plaintiff made an effort to apply the brakes on the motorcycle, but in the moment of excitement and terror, instead of applying the brakes, as he intended to do, he applied instead the accelerator, thereby giving the motorcycle an increase of gas, which caused the same to be propelled directly toward said crossing; that, before plaintiff was able to regain the control of said motorcycle, the same had been placed in a position where a collision with said approaching train was inevitable and unavoidable; that plaintiff, in a frantic effort to avoid the collision, turned the motorcycle to the right, and in the direction in which said train was going, but too late to avoid the collision therewith."

The defendant answered by general demurrer and general denial, and by special plea of contributory negligence on the part of the plaintiff )in approaching the railway crossing without keeping a proper lookout for approaching trains and without heeding the warnings given him by the whistle and bell on the train, by the headlight on the train, and the necessary noise made by the running train.

The plea further charges plaintiff with contributory negligence in approaching the crossing at a rapid and reckless rate of speed, and in not reducing his speed to a point consistent with safety and with the requirements of law.

"In this connection this defendant further alleges that plaintiff on the occasion in question and immediately prior to the accident resulting in the death of his wife and daughter was approaching the intersection of a public street in the city of Houston with the tracks of a steam railroad, namely, that of Beaumont, Sour Lake & Western Railroad, then and there operated by Walker D. Hines, Director General of Railroads, and such street crossed the railroad tracks at grade, and the view of the crossing was obscured either wholly or in part, and plaintiff did not, before attempting to make said crossing and at a point not nearer than 30 feet of the track, reduce the speed of his motor vehicle or motorcycle to a speed not to exceed 6 miles per hour, but continued at the same rapid and reckless speed in excess of 6 miles per hour, in violation of the law applicable under the circumstances.

"Further in this connection this defendant alleges that there was no flagman or gate at this crossing, and there was no indication, either by flagman or gate, that the way was clear and safe to cross, and plaintiff was then and there under the obligation and duty, in compliance with the law, of reducing his speed to not greater than 6 miles per hour at a distance not less than 30 feet from the track, and, had he done so, he could easily have avoided and would have avoided the unfortunate accident which occurred, causing the death of his wife and little daughter."

The cause was submitted to a jury in the court below upon special issues. The issues submitted and the answers of the jury thereto which are relevant to the questions presented by this appeal are as follows:

"Special issue No. 1: Did the employés of defendant in charge of the locomotive on the occasion in question exercise ordinary care in approaching Runnels street crossing to keep a lookout for persons approaching and about to enter upon said crossing? You will answer 'They did' or 'They did not,' according as you

may find the facts to be." To which the jury answered: "They did not."

"Special issue No. 2: If you have answered the preceding special issue in the affirmative, you need not answer this issue; but, if you have answered same in the negative, you will state: Was the failure to exercise care, as inquired about, a proximate cause of the collision? You will answer 'It was' or 'it was not,' as you find the facts to be." To which the jury answered: "It was not."

"Special issue No. 5: Was the locomotive in question, as it approached the Runnels street crossing, operated at a rate of speed in excess of 6 miles per hour at the time of the collision? You will answer 'It was' or 'It was not,' according as you may find the facts to be." To which the jury answered: "It was."

"Special issue No. 6: If you have answered the foregoing special issue in the affirmative, and in that event only, you will answer this issue: Was the operation of the said locomotive in excess of 6 miles per hour, if it was so operated, a proximate cause of the collision? You will answer 'It was' or 'It was not,' according as you may find the facts to be." To which the jury answered: "It was."

"Special issue No. 10: Was the railroad crossing at Runnels street at the time and on the occasion in question, under all the facts and circumstances, one of special and unusual danger to persons traveling over it while using Runnels street? You will answer 'It was' or 'It was not,' according as you may find the facts to be." To which the jury answered: "It was."

"Special issue No. 11: If you have answered special issue No. 10 in the affirmative, and in that event only, you will then answer this special issue: Would one engaged in operating a train over Runnels street crossing, under the facts and circumstances before you, in the exercise of ordinary care as that term has been heretofore defined to you, have maintained a watchman or signal or other device at or about said crossing at the particular time of the accident in question to give warning of danger of approaching trains? You will answer 'Yes' or 'No,' according as you may find the facts to be." To which the jury answered: "Yes."

"Special issue No. 12: If you have answered special issue No. 11 in the affirmative, and in that event only, you will then answer this special issue: Was the failure of the defendant to maintain a watchman, signal, or other device at or about Runnels street crossing at the particular time of the accident in question a proximate cause, as that term has been heretofore defined, of the collision? You will answer 'It was' or 'It was not,' according as you may find the facts to be." To which the jury answered: "It was."

"Special issue No. 13: Was the plaintiff, at the time he approached the railroad crossing in question, operating his motorcycle at a greater speed than 18 miles per hour? You will answer 'He was' or 'He was not,' according as you find the facts to be." To which the jury answered: "He was not."

"Special issue No. 14½: Did plaintiff, J. A. Graham, receive any warning from any source of the approach of the train as he approached the crossing on Runnels street before he reached the point where you believe he first became aware and discovered the approach of the train in time, in the exercise of ordinary care, in

the use of the means at his command, to have avoided the collision? You will answer 'Yes' or 'No,' according as you may find the facts to be." To which the jury answered: "No."

"Special issue No. 15: Would an ordinarily prudent person under the same or similar circumstances have approached the crossing to the point where you believe the plaintiff first became aware of and discovered the approaching train at the rate of speed and in the manner as did the plaintiff? You will answer 'Yes' or 'No,' as you may find the facts to be." To which the jury answered: "Yes."

"Special issue No. 16: Did the plaintiff, on approaching Runnels street crossing, discover the approach of the train in time, in the exercise of ordinary care in the use of the means at his command to have avoided the collision? You will answer 'He did' or 'He did not,' according as you find the facts to be." To which the jury answered: "He did."

"Special issue No. 17: Did the plaintiff, after he discovered the approach of the train, exercise that degree of care, in the use of the means at his command, to have avoided the collision which a person of ordinary prudence would have used under the same or similar circumstances? You will answer 'He did' or 'He did not,' according as you find the facts to be." To which the jury answered: "He did."

"Special issue No. 17½: Did the plaintiff, J. A. Graham, when he became aware of and discovered the approach of the train, become so frightened and terrorized as to render him incapable of rational and prudent action with respect to his own safety and that of his family? You will answer 'Yes' or 'No,' as you may find the facts to be." To which the jury answered: "Yes."

"Special issue No. 18: If you have answered issue No. 17½ 'Yes,' then you will answer: Was such fright or terror, if any you have found, proximately caused by the negligence of the defendant, if you have found the defendant negligent? You will answer 'Yes' or 'No,' according as you may find the facts to be." To which the jury answered: "Yes."

"Special issue No. 19: If you have answered special issue No. 18 'Yes,' and in that event only, then you will answer: Was such fright or terror on his part, if it existed, reasonably justified under the circumstances; that is, would a person of ordinary foresight and prudence similarly situated have become frightened and terrorized? You will answer 'Yes' or 'No,' as you find the facts to be." To which the jury answered: "Yes."

"Special issue No. 20: Was the view of said crossing obstructed either wholly or in part as those terms have been defined to you? You will answer 'Yes' or 'No,' according as you may find the facts to be." To which the jury answered: "Yes."

"Special issue No. 21: Did the plaintiff before attempting to make said crossing and at some point not nearer than 30 feet of said main line track reduce his speed to 6 miles per hour or less? You will answer 'Yes' or 'No,' according as you may find the facts to be." To which the jury answered: "No."

"Special issue No. 22: Was the failure to so reduce his speed a proximate cause of the collision? You will answer 'Yes' or 'No,' according as you may find the facts to be." To which the jury answered: "Yes."

"Special issue No. 23: What sum of money, if paid now, would be a fair and adequate compensation for the injuries alleged and proven, if any, to have been received by plaintiff, J. A. Graham, on the occasion in question, taking into consideration exclusively the following elements of damages, and no others: (a) Mental anguish and physical suffering, if any, by him in the past as a direct result of the injuries, if any, received by him; (b) such sum or sums of money as he has expended or incurred because of said injuries for medical or surgical attention, as well as such sum as he has incurred and expended for the funeral expenses of his wife and child, not exceeding for this item $500; (c) such sum or sums of money as he lost because of lost time from his work, if any, as a direct result of the injuries by him received, if any. You will answer by stating the amount." To which the jury answered: "$2,-800."

"Special issue No. 24: What sum of money, if paid now, would compensate the plaintiff for the value of the loss of the aid or benefits which his wife, Eva Graham, would have bestowed upon plaintiff from the date of the accident in the future, if any you find? You will answer by stating the amount." To which the jury answered: "$8,000."

"Special issue No. 25: What sum of money, if paid now, would compensate the plaintiff for the value of the loss of the aid or benefits which his daughter, Katherine Graham, would have bestowed upon plaintiff from the date of the accident during her minority, if any you find? To which the jury answered: "$1,000."

"Special issue No. 1(a) requested by defendant: (a) Did plaintiff exercise ordinary care on the occasion in question, as he approached the crossing in question, with respect to keeping a reasonable and proper lookout for approaching trains in order to determine whether or not he might make the crossing in safety? Answer 'He did' or 'He did not,' as you find the fact to be." To which the jury answered: "He did."

"Special issue No. 2(a) requested by defendant: (a) Was or was not the plaintiff negligent in respect to the rate of speed he was going on the occasion in question at the instant he first entered a position of danger to himself and family, with respect to the approach of the train in question? Answer 'He was' or 'He was not,' as you find the fact to be." To which the jury answered: "He was not."

"Special issue No. 3(a) requested by defendant: (a) Did the plaintiff exercise ordinary care under all the circumstances prior to his becoming terrorized, in view of the danger at the crossing in question? Answer 'He did' or 'He did not,' as you find the facts to be." To which the jury answered: "He did."

None of the findings of the jury are attacked by the appellant.

After the return of this verdict the trial court, on motion of the defendant, entered a judgment in his favor denying plaintiff any recovery.

Appellant presents but two assignments of error.

The first assignment complains of the rulings of the court granting the motion of defendant to render judgment in his favor and refusing the motion of plaintiff to render judgment in his favor upon the verdict of the jury.

[1] We think the assignment should be sustained. The findings of the jury before set out, as we interpret them, required a judgment in favor of the plaintiff. When considered in the light of the issues raised by the pleadings and evidence, any seeming conflicts in these findings disappear, or can be reasonably reconciled, and it is the duty of the court in interpreting the answers of the jury to the questions submitted to them to reconcile apparent conflicts in the answers, if this can be reasonably done in the light of the pleadings and evidence. Krenz v. Strohmeir (Tex. Civ. App.) 177 S. W. 178; Jordan v. Morgan (Tex. Civ. App.) 154 S. W. 599.

No question is raised by appellee of the sufficiency of the evidence to sustain any of the findings of the jury above set out, and they all stand unchallenged.

The answers of the jury to the first and second issues submitted to them find the employés of the defendant in charge of the locomotive négligent in failing to keep a proper lookout for persons approaching or about to enter upon the crossing, but that such negligence was not the proximate cause of the collision with plaintiff.

In answer to the fifth, sixth, tenth, eleventh, and twelfth questions, the jury find that the locomotive was operated at an excessive rate of speed, and that defendant was further negligent in failing to have a watchman at the crossing to warn persons about to enter thereon of approaching trains, and that such negligent act and omission of defendant was each a proximate cause of the collision in which plaintiff received the injuries complained of in his petition.

Having thus determined the issues as to defendant's negligence, the jury then find that plaintiff, at the time he approached the crossing, was not operating his motorcycle at an unlawful rate of speed, and that prior to his discovering the approaching train he received no warning of its approach in time to have avoided the collision by the exercise of ordinary care, and that up to the time that he discovered the approaching train he was acting as an ordinarily prudent person in approaching the crossing.

In answer to issues numbered 16 and 17 the jury find that after plaintiff discovered the approaching train he could have, by the use of ordinary care, avoided the collision, and that under the circumstances he did exercise the degree of care of a person of ordinary prudence to avoid the collision.

In response to the next three issues submitted the jury find, in effect, that when the plaintiff discovered the approaching train he became so frightened and terrorized that he was incapable of rational and prudent

action with reference to avoiding the collision, that such fright and terror was proximately caused by the negligence of the defendant before found, and that this negligence of the defendant was under the circumstances reasonably calculated to produce such a state of fright and terror in the mind of a person of ordinary foresight and prudence.

In answer to the twentieth, twenty-first, and twenty-second questions submitted to them, the jury find that the view of the crossing was obstructed in the purview of the statute requiring a person approaching a railroad crossing to reduce the speed of his vehicle to 6 miles an hour at a point not nearer than 30 feet to the main track of the railroad, that plaintiff did not so reduce his speed, and that such failure on his part was a proximate cause of the collision.

[2] We do not think these findings are contradictory or irreconcilable, and they can only be reasonably construed as a finding by the jury that plaintiff was not guilty of any negligence which proximately contributed to the collision in which he received his injuries. The findings that he could have avoided the collision after he discovered the approach of the train by the exercise of ordinary care, and that his failure to comply with the statute and reduce his speed to 6 miles an hour was a proximate cause of the collision, cannot be construed as findings of negligence on the part of plaintiff when considered in connection with the further findings that the negligence of the defendant caused him to become so frightened and terrorized as to render him incapable of exercising the care necessary for his safety, and that such fright and terror was a reasonable result of defendant's negligence. The seventeenth finding of fact, that plaintiff did use ordinary care to avoid the collision after he discovered the approaching train, is in apparent conflict with the finding that he was, because of the fright and terror produced in his mind by the negligence of the defendant, incapable of exercising ordinary care, but, when considered in the light of all the findings, it can only mean that plaintiff exercised all the care he was capable of exercising under the circumstances. This construction of the findings is, we think, clearly shown by the answers of the jury to the special issues submitted to them at the request of the defendant, which answers are that plaintiff was not negligent in respect to the rate of speed he was going at the time he first entered a position of danger to himself and family from the approaching train, and that prior to the time he became terrorized by the negligence of the defendant he was exercising ordinary care in the circumstances.

[3] As before stated, none of these findings are complained of by the defendant, and we think they required a judgment for plaintiff.

[4] It is a sound and well-settled principle of both civil and criminal jurisprudence that no person will be held responsible for his acts or omissions which occur when, through no fault of his own, his mind is in such a state of fright or terror as to render him incapable of acting with ordinary care and prudence. In applying this principle to the question of the contributory negligence of a plaintiff who has been injured by the negligence of another, Mr. Beach, in his work on Negligence, states the rule as follows:

"When a plaintiff, through the negligence of the defendant, is placed in a situation where he must adopt a perilous alternative, or where, in the terror of an emergency for which he is not responsible, and for which the defendant is responsible, he acts wildly or negligently, and suffers in consequence, such negligent conduct, under these circumstances, is not contributory negligence, for the reason that persons in great peril are not required to exercise all that presence of mind and carefulness which are justly required of a careful and prudent man under ordinary circumstances. In such case the negligent act of the defendant is the proximate cause of the injury, and the plaintiff may have his action * * * even though the injury would not have happened if the acts had not been done."

This rule was approved and followed by our Supreme Court in the case of Railway Co. v. Neff, 87 Tex. 303, 28 S. W. 283, and the opinion in that case cites a number of authorities sustaining the rule.

Since the decision in the Neff Case the rule as there stated has been uniformly applied and followed by our appellate courts. Some of the many cases in which the rule has been applied are Railway Co. v. Sein, 87 Tex. 303, 33 S. W. 558; Railway Co. v. Bryant (Tex. Civ. App.) 54 S. W. 364; Railway Co. v. Byrd (Tex. Civ. App.) 61 S. W. 147; Railway Co. v. Muske (Tex. Civ. App.) 141 S. W. 565; Yellow Pine Co. v. Wright, 169 Mo. App. 79, 154 S. W. 168; Railway Co. v. Isaacs (Tex. Civ. App.) 168 S. W. 873; Commercial Union Assur. Co. v. Gulf Refining Co. (Tex. Civ. App.) 174 S. W. 874.

The only theory upon which the trial court could have granted the motion to render judgment for the defendant upon the verdict of the jury is that, the jury having found the plaintiff guilty of the violation of the statute requiring him to reduce his speed to 6 miles an hour at a point not nearer than 30 feet from the crossing, he was charged with contributory negligence as a matter of law, and the rule in the Neff and other cases above cited is not applicable.

We think the unsoundness of this theory is obvious. If the plaintiff, as found by the jury, was, through no fault of his own, in such a state of mind as to render him incapable of willfully disobeying the statute, he could not be held guilty of its violation, and no negligence can be charged to him.

[5] We are further of opinion that the statute, the violation of which appellee con-

tends rendered appellant guilty of contributory negligence as a matter of law and bars any right of recovery he might have for the injuries caused by appellee's negligence, is void for uncertainty, and the issue of its violation by the appellant should not have been submitted.

The statute in question is article 820*l* of the Penal Code (Vernon's Complete Texas Statutes), and reads as follows:

"Any person driving a motor vehicle or motorcycle, when approaching the intersection of a public street or highway with the tracks of a steam railroad or interurban railroad, where such street or highway crosses such track or tracks at grade, and where the view of the said crossing is obscured, either wholly or partially, shall before attempting to make the said crossing, and at some point not nearer than thirty feet of the said track, reduce the speed of his motor vehicle or motorcycle to a speed not to exceed six miles per hour before making the said crossing, unless there are flagmen or gates at such crossing and such flagmen or gates show that the way is clear and safe to cross such track or tracks, and provided further that the provision of this section shall not apply to persons crossing interurban or street railway tracks within the limits of incorporated cities or towns within the state."

The violation of this statute is declared to be a misdemeanor punishable by a fine of not less than $10 nor more than $200.

This statute has been construed by the Court of Civil Appeals for the Sixth and Ninth Districts, and these courts disagree as to its meaning. In the case of Schaff v. Bearden, 211 S. W. 503, the Court of Appeals for the Sixth and Ninth Districts holds, in effect, that the statute, being penal, must be strictly construed, and that by its plain terms it only applies when the view of the crossing is obstructed or obscured, and, if the actual crossing is not obscured or obstructed, any obstruction of the view of trains approaching the crossing would not invoke the requirements of the statute.

The Court of Civil Appeals for the Ninth District in the case of Railway Co. v. Harrington, 209 S. W. 685, construes the term "view of crossing," as used in this statute, to mean "that portion of the railroad track to the front and to the right and left, within the view of one approaching the" crossing, and holds that—

"The view of the crossing is 'obscured,' within the meaning of this article, when one approaching the track is not able to see an approaching train at a sufficient distance to enable him, in the exercise of ordinary care, to take the necessary steps for his safety."

[6] This statute does not, in our opinion, define the acts which it condemns with sufficient certainty to meet the requirements of a penal statute. In order to constitute a crime, the act condemned must be defined with such certainty that the citizen is able to know in advance from the written statute what is the act or omission which is made criminal. The fact that the learned judges of the two appellate courts differ so widely as to what act is made a crime under this statute, it seems to us, sought to protect the citizen from the hazard of having to decide at his peril what is the act or omission on his part which is penalized.

We think, under the principles laid down in the case of Griffin v. State, 86 Tex. Cr. R. 498, 218 S. W. 494, this act should be held void for uncertainty.

We are of opinion that the judgment of the court below should be reversed, and judgment here rendered for the appellant for the amount found by the jury, and it has been so ordered.

Reversed and rendered.

### On Motion for Rehearing.

In their motion for rehearing appellees cite the case of Solan & Billings v. Pasche (Tex. Civ. App.) 153 S. W. 674, in support of the proposition presented in the motion that, if it be conceded that article 8201 of the Penal Code, set out in our main · opinion, is so indefinite that it cannot be enforced as a criminal statute, it nevertheless imposed a civil duty the violation of which by plaintiff rendered him guilty of negligence as a matter of law.

The statute under consideration in the case cited did not purport to be a criminal statute, and the learned judge who wrote the opinion in that case making a distinction between. the rule of certainty required in a criminal statute and that which is sufficient in a civil held that the statute there invoked was not invalid.

It may be that a statute enacted for the purpose of defining an offense and prescribing a penalty therefor can be held void for uncertainty in defining the offense for the prevention and punishment of which it was enacted, and yet be held a valid law prescribing a rule of civil conduct, but the logic of such a contention does not seem apparent to us. However this may be, it does not affect the conclusion expressed in our main opinion that, regardless of the validity of the statute pleaded by the defendant in this case, the judgment of the court below should, on the unchallenged findings of the jury, have been in favor of the plaintiff.

The finding of the jury in answer to special issue No. 2, submitted at the request of the defendant, set out in our main opinion, acquits the plaintiff of any negligence in the rate of speed at which he was going at the time he reached a position of danger from the approaching train. The undisputed evidence shows that he realized his danger and lost his presence of mind thereby at or before the time he reached a point 30 feet from the railroad track.

We think the finding above mentioned and the other findings of the jury set out in our

main opinion necessarily include the finding that plaintiff did not approach the point 30 feet from the track at a rate of speed that would have prevented his reducing his speed to 6 miles an hour when he reached that point, and that his failure to so reduce his speed was due to his fright and confusion of mind caused by the negligence of the defendant. Under this interpretation of the verdict the question of the validity of the statute is immaterial.

We have duly considered all of the questions presented by the motion for rehearing, and feel constrained to adhere to our former conclusion as to the proper disposition of this appeal, and the motion is therefore refused.

Refused.