MISSOURI, K. & T. RY. CO. OF TEXAS v. MUSKE et al.

(Court of Civil Appeals of Texas. Galveston. Nov. 7, 1911. Rehearing Denied Nov. 23, 1911.)

1. RAILROADS (§ 372*)—NEGLIGENCE.

A railroad company was negligent in running a passenger train by a station at a speed of from 35 to 60 miles an hour, where another passenger train was standing on an adjoining track and numerous persons, standing on the station platform, were awaiting the arrival of another train, as affecting liability for death of one passing from the train on the adjoining track to the station platform.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1267–1269, 1271–1274; Dec. Dig. § 372.*]

2. RAILROADS (§ 386*)—DEATH OF PERSON ON TRACK—CONTRIBUTORY NEGLIGENCE.

A railroad company cannot avoid liability for death of a pedestrian, struck by a train negligently running at a high speed by a station while he was attempting to regain the station platform in passing from a train on an adjoining track, though, had he remained between the two tracks, he might not have been injured; the space between them being only about 3½ feet.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1295; Dec. Dig. § 386.*]

3. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

In an action against a railroad company for death of a pedestrian, struck by a train which negligently ran by a station at high speed, it was not prejudicial error to admit in evidence a rule promulgated by the company after the accident, requiring trains of certain classes to approach stations under control, though the particular train belonged to a different class, where the rule was substantially the same as one in force at the time of the accident, and where negligence in running the particular train proximately causing decedent's death was clearly shown.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160; Dec. Dig. § 1050.*]

4. RAILROADS (§ 397*)—DEATH OF PERSON ON TRACK—EVIDENCE—ADMISSIBILITY.

In an action against a railroad company for death of a pedestrian, struck by a train negligently running by a station at a high speed while he was returning to the station platform from a train on an adjoining track, where he had gone to deposit mail, evidence that a signal board at the station indicated that the approaching train would stop when he first crossed the track was admissible on the question of decedent's contributory negligence, though it does not appear that he noted the position of the signal or understood it.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 397.*]

5. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF THE EVIDENCE.

In an action against a railroad company for death of a pedestrian, struck by a train which ran by a station at high speed, an instruction that the engineer was bound to use ordinary care in keeping a reasonable lookout for persons on the track was not objectionable as being upon the weight of the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 439–466; Dec. Dig. § 194.*]

6. RAILROADS (§ 400*)—DEATH OF PERSON ON TRACK—NEGLIGENCE — EVIDENCE — SUFFICIENCY.

In an action against a railroad company for death of a pedestrian, struck by a train which ran by a station at high speed, evidence held sufficient to raise an issue of negligence of the enginemen in failing to keep a proper lookout.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 400.*]

Appeal from District Court, Waller County; Wells Thompson, Judge.

Action by A. A. Muske and others against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiffs, and defendant appeals. Affirmed.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

Alexander S. Coke, Lane, Wolters & Storey, and Wm. A. Vinson, for appellant. R. E. Hannay and Meek & Highsmith, for appellees.

McMEANS, J. The Missouri, Kansas & Texas Railway Company of Texas prosecutes this appeal from a judgment rendered against it, on the verdict of a jury, for the sum of $20,000, in favor of the widow and minor children of K. D. Muske, who was killed by a passenger train of appellant at the town of Katy, in Harris county.

Plaintiffs alleged in their petition: That the tracks of the appellant at the station of Katy run practically east and west, and consist of a main line track, next to the depot, and certain side tracks; the depot being south of the main line, and the side tracks being north of the main line. On the morning of the accident a north-bound passenger train arrived at Katy at about 8 o'clock, and backed in on the side track to allow the south-bound flyer to pass. That while standing on the side track passengers, baggage, and mail were discharged from said train and taken aboard, and that parties who had any business with the train, or the employés thereon, were permitted to pass backward and forward from the depot across the main line to the train standing on the side track. That before the arrival of the south-bound train, which was expected by the public at large, the signal board indicated that passing trains would stop at that station. That while the north-bound train was standing on the side track, and while passengers were leaving the same, and baggage was being discharged and taken on, the deceased, K. D. Muske, crossed the main line track and went to the mail car for the purpose of mailing a post card, and that while attempting to mail said postal card, and without any warning of any kind, the appellant negligently caused a train, known as a "special," to pass through the station of Katy at a high rate and dangerous rate of speed of about 60 or 70 miles an hour, which placed deceased in a position that seemed to threaten his life, and that, when he saw the train approaching at such high and dangerous rate of speed, he made an attempt to cross the main line back to the depot, and just as he was about to do so, and had almost crossed the track, he was struck by the train and killed. It was further alleged that the track east and west of the depot, for a considerable distance, was straight, and that the employés on said train, under all the circumstances, were charged with the duty of exercising ordinary care to keep a lookout for the purpose of seeing people who might be upon the tracks at that time and place, and that if such employés had kept such a lookout they could and would have discovered the deceased in ample time to have avoided injuring him, with the means at their command, and that on account of the failure of such employés to keep such lookout they failed to discover the deceased, and thereby caused his death. It was also alleged that the distance between the side track and the main line was only about six feet, and that it was negligence to run said train through said station at such a high speed, under the circumstances, while the north-bound train was standing on the side track. It was alleged that immediately west of the depot and grounds, and the point where deceased was struck, there was a public highway which crossed the appellant's tracks and which was constantly used by the traveling public; that immediately west of said crossing, a distance of about 300 feet, was another public crossing which was constantly and universally used; that the appellant's agents and servants must have known that a large number of people were at the depot and upon and near the crossing at the time said train passed, and that it was negligence for the appellant to permit said train to pass said point at such high speed; that it also was negligence for the defendant to maintain its main line track so near its side track, because one could not safely remain between the two trains while passing at that rate of speed; that it was also the duty of the appellant's agents and servants to have given warning of the approach of said train, as required by the statute with reference to crossing signals; and that, if said servants and employés did sound the whistle, they negligently failed to ring the bell, as required by law.

The appellant answered by general denial, and specially pleaded that the death of K. D. Muske was not caused or contributed to by or on account of any negligence of appellant, but that the same was proximately caused and contributed to by the negligence and want of ordinary care of the said Muske, and without such negligence on his part he would not have been killed.

[1, 2] Appellant requested the court to give to the jury the following peremptory instruction: "The undisputed testimony in this cause shows that Doc Muske, the deceased, was guilty of negligence such as contributed to his death, and was the proximate cause thereof; therefore you will return a verdict for defendant." The refusal of the court to give this charge is made the basis of appellant's first assignment of error.

The evidence in the record warrants the following fact conclusions on the issue of the negligence or contributory negligence of deceased as a proximate cause of his death:

Trains running on appellant's railway from Katy in the direction of Houston are called "south-bound trains," and those running in the opposite direction are called "north-bound trains." The track as it passes through the town of Katy, however, runs practically east and west. The depot at Katy is situated south of the main line track. To the north of the main line and parallel with it is

a switch track, and these tracks are practically eight feet apart.

On the morning of October 3, 1910, appellant's north-bound passenger train arrived at Katy and was placed on the side track to allow a south-bound passenger train, known as the "flyer," to pass on the main line, and while standing on the side track passengers, baggage, and mail were discharged from it and taken aboard. Katy is a regular stopping place for all regular south-bound passenger trains, and at the time in question the signal board, displayed in open view in front of appellant's depot, indicated that the south-bound train would stop at that station. Between 20 and 40 persons had congregated at the depot pending the arrival of the south-bound; some intending to take passage on that train for Houston and others to gratify an idle curiosity. Among others there was K. D. Muske, the deceased, who, as the evidence shows, came for the purpose of mailing a postal card on the north-bound train then standing on the side track.

The south-bound passenger train was known as "No. 5," and on the morning in question this train was being run in two sections. The first, carrying an opera troupe to Houston, was doing no local business and making no stops except where ordered by appellant's train dispatcher. This section was run on No. 5's time and had all the rights of that train. The second section followed the first, and it did all the local work, such as taking on and discharging passengers, baggage, and mail, but surrendered none of its rights by reason of its being run as a second section.

The track leading into Katy from west or north was straight and the country level, so that the smoke from a train approaching from that quarter could be seen, under proper atmospheric conditions, as far as Brookshire, eight miles distant, and at night the headlight of an engine could be seen much further. A train could be seen in daylight quite a distance before it reached the station. Several persons saw the approach of the first section of the train in question a long ways before the whistle was sounded for the station; but all these, with the exception of the operatives of the north-bound train, the station agent, and one person who intended to take passage on the south-bound train and who had been informed by the station agent, were in ignorance of the fact that the approaching train was a first section and that it would not stop at Katy, but supposed it was the regular train No. 5 and as such would make its regular stop at the depot.

The operatives of the first section had orders to wait at Katy until 8:10 a. m. for the north-bound; but when the engineer of first No. 5, upon approaching the station, discovered that the north-bound had already arrived, he knew the necessity for the stop no longer existed, so, when he reached the whistle board about a half mile west of the depot, he sounded the whistle for the station, and then, when within a distance variously estimated as between 300 and 550 feet from the depot, but which upon actual measurements was shown to be 550 feet, he sounded four blasts of the whistle to apprise the operatives of the north-bound that he was carrying signals indicating another train having the same rights was following his, and without checking speed dashed by the station at a negligent and dangerously rapid rate, estimated at between 35 and 60 miles per hour; the lowest estimate being made by the engineer himself.

While first No. 5 was approaching and was in view of persons looking in its direction, the deceased, Muske, started to mail a postal card on the mail car in the north-bound. He crossed the main line, and, going to the baggage car, tendered the card to the baggageman, evidently mistaking him for the route agent, and, being informed by the baggageman that the mail car was further toward the west and toward the engine, he proceeded in that direction; but before he had reached the door of the mail car, and before he had time to deposit the postal card, the four blasts of the whistle, before mentioned, were sounded by the engineer of first No. 5, whereupon Muske threw up his head and looked toward the approaching train and then after an instant's hesitation turned and ran hurriedly in an attempt to cross the main line upon which the train was coming, but was struck just before he crossed the south rail, hurled a distance of 80-odd feet, and instantly killed.

As before stated, the distance between the two tracks was about 8 feet. A passenger car is 9½ feet wide, and it is common knowledge that the distance between the rails of a standard gauge railroad, such as appellant's is, is 4 feet, 2 and a fraction inches, so that the space between two passenger cars when upon the tracks in question is approximately 3½ feet. This space was sufficiently wide for Muske to stand in while the first No. 5 was passing, and had he remained, instead of attempting to cross the main line as he did, he probably would not have been hurt. There is evidence in the record that justified the jury in believing, and this court in concluding, and we do so conclude, that it reasonably appeared to Muske, and he did in fact believe, that it would have been dangerous to him to have remained between the tracks by the side of the cars of the standing train when the other train passed at such high rate of speed. One witness testified that the wind produced by such rapidly moving train would be of such force as to throw down a person situated as Muske was, and the suction which followed after the engine passed would have a tendency to draw him under the cars; but this was strongly denied by appellant's witnesses.

The witness Babcock testified that, before Muske reached the mail car, "it looked to

me like he looked up and saw the train, saw he was in danger, and turned and went across the track." But whether the wind of the train would have been sufficient to knock Muske down, or regardless of the effect of the suction, we conclude that it was negligence on the part of the operatives of first No. 5 to run the train by the depot at the rate of speed it was run, and under the circumstances detailed—and appellant does not contend it was not—that this act of negligence had the effect of putting the deceased in a place of apparent danger, and whether he then acted wisely or cautiously, or otherwise, in trying to cross the track ahead of the train, and thus extricate himself from a situation which appeared to him to threaten his life or serious injury to his person the appellant, whose negligence caused the result, must be held responsible, even though it may develop that, had the deceased remained where he was, he would not have been injured. I. & G. N. R. R. Co. v. Neff, 87 Tex. 308, 28 S. W. 283, and authorities cited; Railway v. Sein, 11 Tex. Civ. App. 386, 33 S. W. 560; Railway v. Bryant, 54 S. W. 364; Railway v. Bird, 61 S. W. 147.

As said by our Supreme Court in the case first cited: "If the standard by which the conduct of the imperiled party is to be judged is to be that which persons of ordinary prudence might be expected to do under like circumstances, how can it be determined what a man of prudence would do under such conditions? A jury is presumed from their knowledge of men and their affairs in ordinary transactions to know what a man of ordinary prudence would do under a given state of facts; but when prudence itself is destroyed, and judgment yields to sudden impulse, when there is neither time nor capacity to reflect, how can any one say what a man, prudent under ordinary circumstances, would do if he should be so situated? The rule is sound and just which holds the party guilty of negligence responsible for the result, if that negligence has caused another to be surrounded by such circumstances as to him appear to threaten the destruction of his life or serious injury to his person, whether that person be prudent or imprudent, if, in an effort to save his life, he make choice of means from which the injury results, and notwithstanding it may turn out that if he had done differently, or done nothing, he would have escaped injury altogether."

The assignment is overruled, as is also the assignment which complains of the refusal of the court to grant appellant a new trial upon the ground that the undisputed evidence established that deceased's death was caused by his contributory negligence.

Appellant's third assignment of error must be overruled. The court properly submitted to the jury whether, under all the facts and circumstances in evidence, the train was run at an excessive and dangerous rate of speed,

and, if the jury so found, whether the running of the train at such speed at the time and place and under the circumstances was negligence and authorized the jury, if they found it was, to find for plaintiffs, if deceased, at the time he was struck, was free from negligence. We think the paragraph complained of correctly charged the law as applied to the facts of this case.

[3] The fourth and fifth assignments complain of the action of the court in admitting in evidence, over objections of appellant, rule 98-D, contained in the time-table and rules promulgated by appellant in January, 1910, subsequently to the death of Muske, governing the operation of certain trains therein mentioned. The rule reads as follows: "Third class and extra trains are required to approach and pass all water tanks, coal chutes, yards and stations completely under control. Speed must be reduced, and the enginemen and trainmen must commence to get their train in hand in ample time so that under no circumstances whatever shall it be possible for it to strike any train, car or engine which may be occupying the track. Responsibility for safety rests with the approaching third class or extra trains."

Appellant contends that the introduction of this rule in evidence was erroneous for the reason that the time-card in which the rule was promulgated was issued after the date that Muske was killed. It was shown, however, that this rule was substantially the same as the rule in effect at the time of Muske's death, and appellant's counsel, in his able oral argument before this court, waived the fourth assignment, which presents the point.

Appellant contends under its fifth assignment that the undisputed testimony shows that the train that killed Muske was neither a third class nor an extra train, referred to in said rule, but was a first-class train, being section No. 1 of regular train No. 5, and that therefore its special charge No. 10 should have been given as requested. The special charge is as follows: "The undisputed testimony in this case is to the effect that the train which struck deceased was not a special or extra train, and therefore rule No. 98-D, introduced by plaintiff, is not applicable to this case."

The testimony complained of was important only on the issue of appellant's negligence in the manner of the operation of the train.

We may concede that the train in question was neither a special nor an extra train within the meaning of the rule, and that the rule did not apply to it, and therefore the introduction of the rule in evidence was erroneous. But we do not think that its admission or the refusal to give the special charge was such error as to require a reversal of the judgment. We think the testimony showing that the engineer of first No. 5 ran his train by the depot at such an ex-

cessive rate of speed was so overwhelming, and that this, under the facts in evidence, was negligence which proximately caused Muske's death, that the conclusion cannot be escaped that the verdict of the jury was based upon this evidence, and could not have been influenced by the introduction in evidence of the rule referred to. The train was being run upon the time of the regular south-bound passenger train, which always stopped at the station, and which in order to do so must slow up and be gotten under control to make the stop; that persons expecting to become passengers believed that the first section was the regular train and began to get their suit cases and otherwise make preparation to board it; that the signal displayed indicated the train would stop; that from 20 to 40 persons were upon the depot premises and were seen by the engineer; that he passed over two much traveled street crossings just west of and a short distance from the depot without reduction of speed; that he knew his train would pass between the depot and the standing north-bound passenger train, yet, notwithstanding these facts, he dashed by at a rate of speed estimated by by-standers at from 50 to 60 miles per hour, and by the engineer himself at 35 miles per hour. Taking all the evidence into consideration, we conclude that it is not conceivable that the jury should have been influenced by the introduction of the rule in reaching the conclusion they did that the engineer was negligent. Railway v. Shapard, 54 Tex. Civ. App. 596, 118 S. W. 600; Railway v. Groves, 44 Tex. Civ. App. 63, 97 S. W. 1084.

As said in the case last cited, and quoted with approval in the Shapard Case: "It is a common thing for the appellate courts to look to the state of the proof in determining whether some slight error, either of law or procedure, is harmless. The fact that the evidence strongly preponderates in favor of the verdict is of weight in such an inquiry." The assignment is overruled.

[4] The sixth assignment complains of the action of the court in admitting in evidence, over appellant's objection, the testimony of the witness Abbott, to the effect that he saw the signal board at the depot just before the train which killed Muske came through, and that the position of the board was a stop signal, but that just before the train reached the station and struck Muske the station agent pulled it in, so that it did not call for a stop of the approaching train.

Appellant contends that it not having been shown that Muske saw the position of the signal board before going in between the tracks, or, even if he had seen it, that he understood the meaning of it in such position, it was immaterial and irrelevant that the board was out just before he went between the tracks.

We think the fact that the signal board indicated that the train, which was approaching when Muske crossed the track to mail the postal card, would stop at the depot was admissible on the issue of his contributory negligence in going between the tracks at a time, when, by looking, he could have seen the train approaching. It is true that there was no testimony to show that he saw the signal board, or that he knew the meaning of signals when displayed; but the fact testified to was a circumstance to be taken by the jury with other facts and circumstances having a bearing upon the issue of the deceased's negligence. Muske was dead and could not testify. The assignment is overruled.

[5, 6] The seventh assignment of error assails the eighth paragraph of the court's charge, wherein the jury are instructed that it was the duty of those in charge of the engine drawing first No. 5 to exercise ordinary care in keeping a reasonable lookout for the purpose of discovering persons who might be upon the track. The contention is that the evidence conclusively shows that the employés of appellant in charge of the train which killed Muske were keeping a lookout as the train approached the station, and that the charge for that reason, is upon the weight of the evidence.

Even if the testimony was conclusive that appellant's agents were keeping a reasonable lookout, the contention that the charge is upon the weight of the evidence is untenable. But we do not think that it was established by the undisputed evidence that a lookout was kept. It was shown that the track was straight and level, and that there was no obstruction to obscure the view of the engineer. The engineer does not expressly say he kept a lookout, but did testify that he saw people at the depot, and that, when he sounded the whistle to attract the attention of the operatives of the north-bound train to the fact that he was carrying signals for a train that was following, he saw Muske standing between the tracks, and that he did not see him thereafter until Muske had been struck. The fireman testified that he was keeping a lookout, but that the range of his vision was obscured by smoke and steam escaping from the engine on his side, but that this did not obstruct the view of the engineer, and that a person in the position occupied by Muske could have been seen by the engineer at all times until the engine came within about 20 feet of him. In these circumstances we think the evidence was sufficient to raise the issue of the negligence of the operatives in failing to keep a proper lookout. But, even had the operatives testified that they did keep a lookout, the jury, in view of the fact that the track was level and straight, and that there was nothing to obstruct their view, and the further fact that the engineer testified that he saw Muske when some distance away and did not see him again until he had been struck, would not have been bound to believe that they kept a reasonable lookout; but an

issue would have been raised sufficient to take the question to the jury for their determination. Brown v. Griffin, 71 Tex. 657, 9 S. W. 546; Railway v. Brock, 35 Tex. Civ. App. 155, 80 S. W. 424.

The further contention under this assignment is to the effect that whether it was the duty of the employés of first No. 5 to keep a lookout was a question of fact for the determination of the jury, and that it was error for the court to take this question from the jury by charging that such was their duty. We think that to have run the train by the station at the rate of speed shown, and under all the circumstances existing at the station at the time, without keeping a reasonable lookout for persons who might be lawfully upon the track, or in such proximity as to be injured by the passing train, would be an act so wanting in ordinary care that the court could declare it to be negligence as a matter of law. The assignment is overruled.

We have found no reversible error in the record, and the judgment of the court below is affirmed.

Affirmed.