**TEXAS & N. O. R. CO. v. DIAZ et al.**
**(No. 674.)**

(Court of Civil Appeals of Texas. Beaumont. May, 1921. Rehearing Denied Nov. 21, 1921.)

1. Negligence ⬅136(9)—Question of law when undisputed facts admit of but one inference.

Negligence is generally a question of fact, and becomes a question of law for the court only when the act done is in violation of some law or when the facts are undisputed and admit of but one inference regarding the care of the party in doing the act in question.

2. Railroads ⬅346(1)—Presumption is that employés and pedestrian exercised due care.

In an action for the death of a pedestrian at a railroad crossing, the law presumes, in the absence of proof to the contrary, that the railroad employés were exercising due care and that pedestrian was also in the exercise of due care.

3. Railroads ⬅346(5)—Defense must prove contributory negligence.

In an action for the death of a pedestrian killed at a railroad crossing where the defense

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

was contributory negligence, the burden is upon the railroad company to prove pedestrian was negligent under all circumstances as they appeared to him; that is, that a reasonably prudent person in his position and with his knowledge of the situation would not have acted as he did.

**4. Railroads ⬤⟲350(28)—Pedestrian's contributory negligence question for jury.**

A pedestrian, who was familiar with the crossing and knew that switch engines frequently approached it without crossing and that a warning was given by the flagman and by engine signals before a train crossed, was not contributorily negligent as a matter of law in entering upon the crossing when an engine was standing at the side thereof and when no warning was given by the flagman or by the engine that it was about to start over the crossing.

**5. Railroads ⬤⟲330(1)—Pedestrian can rely on observance of requirements as to speed and signals.**

When signals and warning are usually given or a limited speed is required at a railroad crossing, a pedestrian going upon the track at the crossing may rely on those duties being performed and is not contributorily negligent in failing to anticipate their violation.

**6. Railroads ⬤⟲330(1)—Contributory negligence judged from viewpoint of pedestrian.**

In determining whether a pedestrian in going upon a railroad crossing was contributorily negligent as a matter of law, the situation should be considered from his viewpoint, keeping in mind that he was familiar with the precautions required and usually taken for the safety of the public at such crossing.

**7. Railroads ⬤⟲334—Wrong act in emergency not contributory negligence.**

Where a pedestrian on a railroad track, in an emergency created by the railroad's negligence, attempted to turn around and go back, but fell under the engine while doing so, evidence that he could have reached safety by going straight ahead after he heard the warning shout does not establish his contributory negligence.

**8. Railroads ⬤⟲350(16)—Pedestrian's contributory negligence in not observing engine held for jury.**

Where a pedestrian before entering upon a crossing saw an engine standing at the side thereof, evidence that thereafter he proceeded to cross the tracks without observing the engine *held* not to show as a matter of law that he must have seen or heard its approach, especially in view of the fact that he had a wooden leg so that he had to watch his steps carefully and that he knew that the company had a flagman to give warning of danger.

**9. Appeal and error ⬤⟲736—Multifarious assignment not considered.**

An assignment of error which is multifarious cannot be considered.

**10. Railroads ⬤⟲348(2)—Evidence held to show negligence was proximate cause of accident.**

In an action for the death of a pedestrian at a crossing, evidence *held* to sustain the jury's finding that the failure of the flagman and of the engine crew to give warning before the engine started across the crossing was the proximate cause of the accident.

**11. Trial ⬤⟲352(4)—Requested issue on contributory negligence omitting finding of proximate cause properly refused.**

In an action for the death of a pedestrian at a railroad crossing, the court properly refused to substitute for its special issue on contributory negligence a special issue requested by the defendant presenting the defense affirmatively, where the requested issue failed to include a finding on proximate cause and was therefore an issue as to evidentiary facts only.

**12. Trial ⬤⟲352(1)—Special issue on contributory negligence held not to impose excessive burden.**

A special issue as to whether deceased before he went on the track, in the exercise of due care, could have discovered that the engine was about to approach over the crossing and that he was in probable danger therefrom, *held* not erroneous as imposing an excessive burden on the defendant.

**13. Negligence ⬤⟲132(3)—Evidence of frequent intoxication held inadmissible.**

In an action for the death of a pedestrian at a railroad crossing, evidence offered by defendant that the witness had frequently seen deceased under the influence of whisky was inadmissible, where there was no evidence he was under such influence at the time he was killed, except the finding of a whisky flask nearby, which was not traced to his possession.

**14. Death ⬤⟲99(4)—$8,000 for death of husband held not excessive.**

In an action for the death of a cobbler 39 years old, who was at the time employed at a restaurant and earning $32 a month and board for his family, consisting of his wife and two daughters, the oldest 14 years of age, a verdict awarding $8,000 as damages is not excessive, in view of the rule that pecuniary benefits from the continued life of the father include the value of the nurture, care, and education the child would have received.

Appeal from District Court, Harris County; J. B. Harvey, Judge.

Action by Manuela Diaz in her own behalf, and as next friend for her minor children, against the Texas & New Orleans Railroad Company. Judgment for the plaintiffs, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood and Garrison, Pollard, Morris & Berry, all of Houston, for appellant.

Presley K. Ewing, Ewing Werlein, and I. H. Kenner, all of Houston, for appellees.

---

⬤⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

O'QUINN,· J. This is a suit by Manuela Diaz in her own behalf, and as next friend for her minor children, Consuela Diaz and Palmira Diaz, to recover damages for the death of Luciana Diaz, husband of Manuela Diaz and father of said minors, who was run over and killed by a locomotive of appellant at Hardy Street crossing in the city of Houston on the night of June 11, 1917, and which was alleged to have occurred by the negligence of appellant, with appropriate allegations of fact showing such negligence. The defendant answered, pleading general denial and, specially, that deceased's injury was the result of his own negligence.

The case was submitted to the jury upon the following special issues:

(1) "Was or was not the engine which struck and killed Luciana Diaz running at the time within the corporate limits of the city of Houston at a greater rate of speed than six miles an hour? Answer, 'It was,' or, 'It was not,' as you may find."

To which the jury answered: "It was."

(2) "If you answer, 'It was,' then was or was not such excessive rate of speed a proximate cause, as before defined, of the injuries resulting in the death of Luciana Diaz? Answer, 'It was,' or, 'It was not,' as you may find."

To which the jury answered: "It was."

(3) "Was or was not the engine bell rung continuously on the occasion in question while the engine was in motion proceeding across Hardy street? Answer, 'It was,' or, 'It was not,' as you may find."

To which the jury answered: "It was not."

(4) "If you find it was not, then was or was not the failure of such ringing of the bell a proximate cause, as before defined, of the injury resulting in the death of Luciana Diaz? Answer, 'It was,' or, 'It was not,' as you may find."

To which the jury answered: "It was."

(7) "Did or did not defendant's employés in charge of the engine, or any of them, fail, on the occasion in question, to exercise ordinary care, as before defined, to keep a reasonable lookout for person or persons who in passing over the crossing might be in danger from the engine? If you find that any of them did so fail, answer this issue, 'Yes,' otherwise answer, 'No.'"

To which the jury answered: "Yes."

(8) "If you find there was a failure to exercise ordinary care, as submitted in the next preceding issue, then was or was not such failure a proximate cause, as before defined, of the alleged injury and death of Luciana Diaz? Answer, 'It was,' or, 'It was not,' as you may find."

To which the jury answered: "It was."

(9) "Did or did not the defendant's flagman or watchman at the crossing fail, on the occasion in question, to give any reasonable or adequate warning for avoidance of injury to Luciana Diaz? Answer, 'He did,' or, 'He did not,' as you may find."

To which the jury answered: "He did."

(10) "If such flagman or watchman did so fail, was or was not his failure negligence, as before defined? Answer, 'It was,' or, 'It was not,' as you may find."

To which the jury answered: "It was."

(10½) "If such flagman or watchman was negligent, as submitted in the next preceding question, was or was not such negligence a proximate cause, as above defined, of the alleged injury and death of Diaz? Answer, 'It was,' or, 'It was not,' as you may find."

To which the jury answered: "It was."

(11) "Did or did not the defendant's employés on the engine, or any of them, actually discover that the deceased, Diaz, was in peril of being struck by the engine in time, by the exercise of ordinary care, in the use of all the means at command, consistent with the safety of the engine and those on it, to have avoided the injury to him which resulted in his death? If you find this issue in the affirmative, answer, 'Yes,' if in the negative, answer, 'No.'"

To which the jury answered: "No."

(14) "Would or would not the deceased, before he went onto the track where he was injured, in the exercise of ordinary care, as before defined, have discovered, by seeing or hearing that the engine was approaching or about to approach over Hardy street, and that he was in probable danger therefrom, if he continued forward, in time to have stopped before he reached such track, so as to have prevented the injury to him?

"If, under all the attendant circumstances, you believe from a preponderance of the evidence that the deceased, on the occasion in question, failed to exercise ordinary care to discover and avoid injury from the approaching engine, as submitted in the above issue, then answer the issue, 'He would.'

"If, under all the attendant circumstances, you do not so believe, but find that the deceased, in proceeding over the track, as you may find he did, was acting as a person of ordinary prudence would have acted under the same or similar circumstances, then answer the issue, 'He would not.'"

To which the jury answered: "He would not."

(15) "What sum of money, if paid now in cash, if any, will fairly compensate plaintiffs, Manuela Diaz, Consuela Diaz, and Palmira Diaz, for the pecuniary loss, if any, which you believe from the evidence they have sustained by reason of the death of Luciana Diaz, based upon their reasonable expectation of pecuniary benefits, if any, from the continuance of his life had he lived?

"Answer, stating the amount, if any, and dividing the sum among such persons entitled to the benefit thereof as you may find by your verdict.

"In answering the above issue, as to damages, you will not consider or allow anything in the way of compensation on account of sorrow, or mental distress, or for loss of society or companionship.

"Pecuniary benefits, as the phrase is above used, is not confined to money alone, but would include the services of the father and husband about the home and his care and counsel, if the evidence shows that such would, in reasonable probability, have been bestowed."

To which the jury answered: "8,000. Manuela Diaz, $4,000; Consuela Diaz, $2,000; Palmira Diaz, $2,000."

Appellant filed motion to set aside the findings of the jury, which was overruled by the court, and judgment was rendered for appellee, from which appellant appeals.

Appellant's first assignment of error complains of the court's refusal to give its special requested charge No. 1, for an instructed verdict in its favor. Under said assignment, it is urged that the act of the deceased in going upon the track at the time and under the circumstances he did was such negligence as amounted to contributory negligence as a matter of law, and a bar to a recovery for his death.

Appellant in its brief, in approaching a discussion of the above assignment, admits, in deference to the verdict of the jury, that the engine bell was not rung, and that the engine was running more than six miles an hour, in violation of an ordinance of the city of Houston, and that no switchman or switchmen were on the footboard of the engine, as it headed across the street on the occasion in question. Appellant further says:

"In setting out the testimony, we shall omit all evidence bearing upon the negligence vel non of the defendant's employés operating the switch engine and of its watchman or flagman, and confine ourselves to the question of the contributory negligence of the deceased in going onto the track at the time and under the circumstances he did, when if he had used ordinary care he would have heard and seen the engine and have known of its approach in time to have stopped and avoided the injury."

The undisputed evidence showed that Hardy Street crossing, where the deceased was injured, is within the corporate limits of the city of Houston; that Hardy street at and near the crossing was a much traveled thoroughfare; that people traveled it on foot and in vehicles at all hours of the day and night; that people were living practically at the crossing, and near by was a populous section of the city; that there were some seven railroad tracks at and near the place of accident; that a large number of trains daily ran over said crossing, and a great deal of switching of cars was done there day and night, there frequently being as many as two switch engines moving back and forth over this crossing on some of the tracks at the same time; that, in some of these switching movements, the engines and cars were moved down to the edge of Hardy street and then back in the direction from which they came, without crossing over the street; that the switch engine which struck deceased, with its crew, except the engine foreman, moved out of the roundhouse east of the crossing and proceeded in a westerly direction until it reached a point almost in line with the sidewalk on the east side of Hardy street, where it stopped to line up the track for the switch track which they intended to enter, and to pick up the engine foreman, who had preceded the engine and had stopped at the yardmaster's office for orders; that after these purposes had been accomplished, the engine proceeded westwardly across Hardy street and struck the deceased, who was a one-legged Mexican, at a point on the west side of the street where the sidewalk would have been had one been built across the street on that side; that this occurred shortly after 11 o'clock at night; that an arc light was burning brightly at the crossing, which made persons and objects in the vicinity clearly visible; that appellant kept a watchman or flagman at said crossing both day and night, whose duty it was to watch for and warn persons about to go over said crossing by flagging or stopping them, when necessary to avoid danger; and that it was customary for persons to cross over, unless they were flagged.

Antonio Benavides, witness for appellees, and the only eyewitness to the striking of deceased by the engine, testified, in substance, that he was walking some 35 feet behind deceased, approaching. said crossing, and could plainly see him; that deceased was going north in the direction of his home, and that just before deceased got to the switch tracks, the engine came up from the east side and stopped about the edge of Hardy street; that it stood there for some two minutes and then proceeded westwardly over the crossing, going some 60 feet before striking deceased, who. had gotten about 10 feet inside of the track when he was hit; that the bell was not rung, and no signal or warning of any kind was given deceased by any of appellant's employés; that the flagman was not out there at the time of the accident, but was in his shanty nearby and came out after the accident; that the engine was running about 15 miles an hour at the time it struck deceased, and that there was no switchman on the head end of the engine, but that after deceased was struck, the switchman came from the back of the engine; that when he first saw the engine standing on the other side of the street, deceased was passing the flagman's shanty, and was about 10 or 11 feet from the track on which he got hurt; that when the engine started up, it started fast; that there was an electric light burning over the crossing and a headlight burning on the engine, which was headed towards deceased; that when he first saw deceased, he (deceased) was walking north towards the track, and continued to walk until he was struck; that deceased was a one-legged man, had a wooden leg, and was walking slow; that he (witness) could see the engine and deceased all the time, both being in front of him, and that there was nothing to keep him from seeing them; that there was nothing to keep deceased from seeing the engine when it was standing on

the other side of the street and while it was crossing over towards him; that when deceased stepped upon the track where he was struck, the engine was only 2 or 3 feet from him; that deceased was killed on the third track, and that he (deceased) was about 10 feet from that track when the engine started from the other side of the street, and that the engine ran about 60 feet before it struck deceased.

B. Melton, witness for appellees, testified, in substance: That he had lived in Houston since 1907, and that during that time he had lived for two years in Fifth ward near Hardy Street crossing; that he had crossed at that crossing many times, both day and night; that appellant maintained a flagman there; and that if there was any danger he (the flagman) would flag persons back or to stop or to hurry up, and if no train was coming there would be no flagging.

Catharina Noriega, witness for appellees testified, in substance, that she lived within about one block of Hardy Street crossing; that she saw the engine that struck deceased on the occasion in question, and that when she first saw the engine it was standing, and that it started up and moved across the street, when it suddenly stopped; that then she saw a man come down from the engine that she thought was the engineer, and a man coming from the rear of the engine.

Manuela Diaz, the plaintiff, testified, in substance, that deceased, her husband, had been working for a restaurant for about two months before the accident, and that in moving to and from his home to the restaurant and coming back, he would pass over Hardy Street crossing every day and night.

Will Thomas, witness for appellant, testified, in substance:

That he was watchman or flagman for appellant, and was out near the crossing when the accident happened; that he was standing on the south side of No. 4 track facing the east, nearer to his shanty than to the center of the street, watching for automobiles and things that were passing, looking north and south, in both directions; that he saw deceased just as he passed in 4 or 5 feet of the track; that when he (witness) saw the engine pass, he hollered to deceased to look out, and deceased went to step back somehow, and by that time he was hit by the engine. "Just as he got upon the track and I hollered to him to look out, so he went to step back some way and he fell." That his duty as flagman was to protect the lives of people as near as he could. "If I see persons approach or any person approaching there to go over the tracks and a train was about to come that might injure them, I would flag them or warn them back. That was the course of my business. The custom was if there wasn't nothing working, no engines passing or working around there, they could go on. When you want them to stop, you flag them to stop. When the coast is clear and I am going to let them go, I don't flag them, and they go on. In other words, the public travels over there unless they are flagged. That has been the custom over that crossing. In fact, as long as I know about any crossing at all, that is a general custom. The reason they had a flagman there, there was no way for the public to tell when an engine was going to run over the street or when it wasn't going to run over the street. You couldn't tell because you would see one on the side, and you couldn't tell whether it was going over the street or going back. You had to watch out. Sometimes the engine might be at the edge of the street, and when it got ready to go, it would go, whether from the street inside or coming from the street, and they would run backwards as well as forwards sometimes. There wasn't anything to keep any of the employés from seeing this man as he was walking along this track, or to prevent them from seeing him as he approached over and walked along over those tracks. It was all in the clear from where he was standing and in the clear for them. * * * I was on Hardy street at the time he crossed along there. It was my duty to watch out for people coming and going and to protect them and save their lives. He was in plain view of all of us, myself and the employés on the engine and all. Taking Hardy street it runs north and south. I was between the center of the street and my shanty. I didn't see the party come until he was right up to the track, in five feet of it. As he approached the track going that way he passed to my back, because I was not facing—looking east, you know."

G. A. Brady, witness for appellant, among other things, testified, in substance, that he was engine foreman of the crew on the engine that killed deceased; that at 11 o'clock he reported for orders, and that just prior to that time the engine was brought out of the roundhouse and stopped at the east edge of Hardy Street crossing, at No. 4 switch track; that he got orders from the yardmaster to go in on No. 4 switch, and that as the engine started he got on the engine and was putting his lunch away; that as he came out of the office where he got his orders, he saw deceased standing just in front of this office on the opposite side of the street, sort of in front of the flagman's shanty on the west side of the street; that the last he saw of deceased was after he (witness) had gotten on the engine; that while he was putting away his lunch the engine suddenly stopped, and he got off and found that they had run over deceased. He further testified that appellant had maintained a flagman there that he knew of since 1912; that when he (witness) came out of the office on the other side of the street, he saw deceased standing near the switchman's shanty; that he had seen him before on different occasions; and that he knew that deceased was a one-legged man and walked with a stick.

B. F. Williams, witness for appellant, testified, in substance, that he was engineer on the engine that ran over deceased; that when he got to Hardy street he stopped just east of Hardy street at No. 4 switch, stayed

there a few seconds, and in obedience to a signal from the switchman on the front end of the engine he proceeded across on track No. 4 and struck ·deceased. He further testified:

"From the time I started until I stopped, I didn't go much over an engine length—just a little over an engine length. That is about—I believe this engine is about 50 feet long—about 60 feet I suppose I went. * * * When I first went up· to Hardy street, I did not stand there, I don't think, over two or three minutes, just long enough for a man to come down and line up the switch, just a very few minutes."

A. J. Wallace, witness for appellant, testified, in substance, that he was one of the switchmen with the engine at the time of the accident; that he threw the switch and headed the engine on No. 4 track; that the engine had been standing on the east side of Hardy street until they had orders to go in on No. 4; that he saw deceased standing by a telegraph pole on the opposite side of the street near the watchman's shanty, and that as he threw the switch deceased was standing there; that he did not know how long deceased was standing there; that he did not know how long deceased had been standing there, nor when he started again; that he just had a glance of deceased.

A. C. Pace, witness for appellant, testified, in substance, that he was one of the switchmen with the engine when deceased was run over; that he got on the engine after it came up to the east side of Hardy street; that he got on the right-hand side of the engine on the footboard facing east, but he at once changed and faced .west, and that when he changed around and faced the direction the engine was going, he saw some· one in the center of the track, probably four or five feet ahead of the engine, and hollered to him to look out and gave a stop signal; ·that when he hollered at the deceased, deceased was at about the center of the track, and turned around and tried to go back the same way he came, and stumbled and fell across the rail; that just before witness got on the footboard of the engine, he saw deceased standing over by the light post on the opposite side of the street; that was just a few seconds before he (witness) got on the engine; that after he got on the engine, he stayed with his back towards the west just about as long as it would take to turn around with safety; that when he got turned around they were within four or five feet of deceased; that when he saw deceased on the track, he was going north, but when he saw him standing at the post, he could not say which way he was looking, just had a glance at deceased while he was standing. He further testified:

"After I hollered, Diaz turned around and tried to get off the track. He didn't have time to go the way he did; if he went on, he would have had plenty of time. He did not have plenty of time in four feet; he was right about the center of the track then. When I saw him and hollered at him, we had only ·about four or five feet to run, and he was about in the middle of the track, and a one-legged man. I think he had plenty of time to get over there if he had gone forward. The reason I know that is where he fell is from my opinion he must have stumbled on the outside rail of No. 4 track there trying to get over, and had to turn all the way around on his wooden leg to get over and go back if he could get that far."

J. N. Weller, witness for appellant, testified, in substance, that he was fireman on the engine when deceased was· run over; that they stopped the engine on the east side of Hardy street, and stayed there a few minutes, and picked up the crew, and that he saw the deceased standing some eight or ten feet, maybe twelve, from. the track; that about the time he saw deceased, the engine began to move; and that after the engine started to move he did not see deceased any more until he was struck.

J. H. Hobgood, witness for appellee, testified, in substance, that he knew deceased by sight; had seen him pass Hardy street very frequently at night.

The evidence, we think, sustains all· of the findings by the jury, and shows that appellant was guilty of negligence, and that such negligence was the proximate cause of the death of Luciana Diaz, husband and father of appellees. The controverted issue of fact determinative of this case is: Was the deceased guilty of negligence in going upon the track of appellant, and, if so, was such negligence the proximate cause of his death?

[1-3] Appellant contends that the deceased was guilty of contributory negligence as. a matter of law. Now, negligence, whether of plaintiff or defendant, is generally a question of fact and becomes a question of law to be decided by the court only when the act done is in violation of some law, or when the facts are undisputed and admit of but one inference regarding the care of the party in doing the act in question; in other words, to authorize the court to take the question from the jury, the evidence must be of such character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it. Lee v. Railway Co., 89 Tex. 588, 36 S. W. 63; Adams v. Railway; 164 S. W. 853; Wininger v. Railway, 105 Tex. 61, 143 S. W. 1150. The law presumes that the servants of appellant were exercising due care in the operation of the engine when deceased was killed, but appellee proved they were not, which established her case. Upon the other hand, the law. presumes that the deceased was in the exercise of due care when he was killed, and it devolved upon appellant to prove that he was not, in order to relieve itself of the liability fixed upon it

by its negligent acts causing his death. Do the facts of this case fill the requirements of the law, in order to constitute contributory negligence on the part of deceased, as a matter of .law? We do not think so. The burden was upon appellant, it conceding .its own negligence, to prove that under all the circumstances, as they appeared to deceased, and his knowledge of the methods of operating said crossing, that no ordinarily prudent person would have attempted to cross as he did; in other words, w•uld a reasonably prudent person, in deceased's position, with his knowledge of the situation and of appellant's custom of operating at said crossing, have acted as he did?

[4] The jury found, in answer to special issue No. 14, that he would, and we think their finding is supported by the evidence. Railway v. Butts, 209 S. W. 426. Deceased was walking over the crossing through the switchyard where many had been accustomed to go at all hours, both day and night, for many years. He was familiar with the crossing and the manner of its conduct by defendant. He knew that a watchman was kept there for the purpose of warning persons of the danger, and that in the absence of warning, it was customary to pass over. He knew of the required speed and continuous ringing of the bell when the engine was in motion, required by the city ordinances, and that appellant's servants were required to and did usually observe same. The evidence discloses that at about the time deceased approached the crossing, the engine ran up to the east side of the street crossing and stopped. At that time deceased was seen standing opposite on the west side, evidently waiting for the engine to pass, but that when it stopped, he, knowing that they sometimes did not cross over and that if there was danger he would be flagged, concluded either that the engine was not going to come across the street, or that, if it did, he would have time to pass over in safety, and also that if it was going to come across, and there was any danger, the watchman would flag or stop him, and acting under this belief, attempted to cross over, and was killed, under the circumstances shown by the evidence. Hovey v. Sanders, 174 S. W. 1029.

[5] Under the law, when signals and warnings are usually given, or a limited speed is required in certain places, such as the crossing in question, one rightfully going upon the track may rely upon those duties being performed, and is not guilty of contributory negligence in failing to anticipate their violation or nonobservance. Railway Co. v. Brock, 35 Tex. Civ. App. 155, 80 S. W. 425; Railway Co. v. Matthews, 34 Tex. Civ. App. 302, 79 S. W. 73; Railway Co. v. Gray, 65 Tex. 36; Railway Co. v. Shieder, 88 Tex. 152, 30 S. W. 902, 28 L. R. A. 538; Trochta v. Railway Co. (Com. App.) 218 S. W. 1038; Rail-

way Co. v. Price, 222 S. W. 628; Ward v. Cathey, 210 S. W. 291; Boyd v. Railway, 101 Tex. 411, 108 S. W. 813; Wininger v. Railway Co., 105 Tex. 62, 143 S. W. 1150.

[6] In determining whether or not deceased, in going upon the crossing as he did,· would be. guilty of contributory negligence as a matter of law, the situation should be considered from the viewpoint of deceased, as he approached the crossing, keeping in mind that he was familiar with the methods of operation, and had knowledge of the precautions required and usually taken for the safety of the public, especially that the flagman, by whom one in danger or about .to enter into a dangerous situation at said crossing would be warned or flagged back, and that customarily one, when not flagged, could go on in safety. When deceased was approaching the crossing, looking straight ahead, he could see the engine standing on the opposite side of the street. Several of the witnesses for appellant testified that they saw deceased stopped, standing near the watchman's shanty, some ten or twelve feet from the track, where he was killed, looking around, saying they only saw him at a glance just. before or near or about the time the engine started. Evidently, if deceased did stop, it was to observe the situation, and seeing the engine standing on the other side of the street, and no warning signal of any kind having been given him, and supposing that if it was going to come across that the required and customary. signals would be given, and that the engine would run at a lawful rate of speed, he concluded he might with safety cross.

[7] Some of the witnesses testified that if he had gone straight forward and not turned about when hollered at, he would have probably gotten across. That ·deceased could have gone forward, and probably escaped injury, we do not think should be considered as negligence against him, under the circumstances. The sudden appearance of the engine so near him and the hollering switchmen doubtless excited him, and in turning around and trying to extricate himself from the situation which appeared to threaten his life, the appellant, whose negligence caused the result, must be held responsible, even though if deceased had gone on he might have crossed in safety. When one, through the negligence of another, is placed in a situation where he must adopt a perilous alternative, or where, in the terror of an emergency, for which he is not responsible, and for which the other is responsible, he acts wildly or negligently, and suffers in consequence, such negligent conduct, under these circumstances, is not contributory negligence, for the reason that persons in great peril are not required to exercise all that presence of mind and carefulness which are justly required of a careful or ·prudent person under ordi-

nary circumstances. In such cases the negligent act of the defendant is the proximate cause of the injury. Railway Co. v. Muske, 141 S. W. 568; Railway Co. v. Neff, 87 Tex. 308, 28 S. W. 283.

[8] Appellant complains that deceased, by the exercise of his senses of seeing and hearing, could have seen and heard the engine, and thus have avoided the injury. It must be remembered that there was a network of tracks at this crossing; that trains and engines, all through the day and night, passed to and fro over this street; that frequently as many as two engines would be switching at once, sometimes one on each side, and frequently going back without crossing over; that appellant recognized the dangerous situation and maintained a flagman or watchman at said crossing day and night, whose duty it was to warn people, when necessary, and that it was customary, when not warned by him, to cross over; that the deceased was there in full view of the employés operating the engine; that there was no bell rung to warn him, and also that if they would use due care to protect him, he could either cross over in safety or would be warned back out of danger. It must also be remembered that deceased was a one-legged man, using a wooden peg, and the condition of the street with its numerous track rails demanded of him attention as to where he was placing his wooden peg, to avoid being thrown down, and thus his attention was directed straight ahead, watching his step, and not expecting the engine to start without warning, he would not be likely to take notice of the mere noise of the moving engine, if heard, when a sharp ringing of a bell or the warning of the flagman would have instantly arrested his attention and saved him from the jeopardy of the situation.

Appellant's first assignment of error is overruled.

What we have said as to appellant's first assignment of error disposes of its second assignment.

[9] Appellant's third assignment of error is multifarious and cannot be considered. Sanitary Mfg. Co. v. Gamer, 201 S. W. 1071; Thornton v. Daniel, 199 S. W. 832. But we do not think any error is shown.

[10] Appellant's fourth, fifth, sixth, and seventh assignments of error relate to whether the matters of negligence, of which the jury convicted appellant, could have been proximate cause; appellant contending that they nor either of them were the proximate cause of deceased's death. These assignments are overruled.

Appellant's eighth assignment of error is as follows:

"The court erred in overruling defendant's exception and objection to special issue No. 14, for the reason that if the court should submit the issue of contributory negligence, the court should submit the defendant's theory in an affirmative way, and that on the issue of contributory negligence the defendant is entitled to have the facts grouped and presented in an affirmative way, and the plaintiffs are not entitled to have the facts grouped and presented in an affirmative way to show that the deceased was not guilty of contributory negligence, and if this issue is presented at all, then the defendant submits the following issues in lieu of the one submitted by the court:

"'Would or would not the deceased, as he approached the track or the defendant company on Hardy street with the exercise of ordinary care, have seen or heard the approaching engine in time to have stopped before he reached the track so as to have prevented the accident?

"'In connection with and as explanatory of the above issue, you are instructed that if you find and believe from the evidence that as the deceased approached the track of the defendant company at Hardy Street crossing, he had an unobstructed view of the engine while it was standing or while moving towards him, and that there was nothing to prevent him from seeing the engine while standing and while moving towards him or towards the crossing on Hardy street, or that there was nothing to prevent him from hearing the engine while moving westward across Hardy street, and that the headlight was burning on the engine as it moved westward across Hardy street, and that if the deceased had looked or listened he could have seen or heard the engine as it moved westward across Hardy street, and that he stepped upon the track of the defendant company in front of said moving engine, and you further find and believe that a person of ordinary prudence would not have done so, then you are instructed that the deceased would be guilty of contributory negligence, and you will answer the above question, "Yes," otherwise, "No."'"

Under said assignment, appellant submitted the following proposition:

"In a jury trial case, the defendant is entitled to an affirmative presentation of an issue raised by the pleadings and evidence upon which he relies for the establishment of his defense, and it is his right upon proper request to have the issue affirmatively submitted by the court through an appropriate instruction, grouping the facts which, if determined in his favor, will, under the law, entitle him to a verdict, and this is true whether the case is submitted under a general charge or upon special issues."

Special issue No. 14, to which appellant objected, and for which it requested the above as a substitute, is as follows:

"Would or would not the deceased, before he went onto the track where he was injured, in the exercise of ordinary care, as before defined, have discovered, by seeing or hearing, that the engine was approaching or about to approach over Hardy street, and that he was in probable danger therefrom, if he continued forward, in time to have stopped before he reached such track, so as to have prevented the injury to him?

"If, under all the attendant circumstances, you believe from a preponderance of the testi-

mony that the deceased, on the occasion in question, failed to exercise ordinary care to discover and avoid injury from the approaching engine, as submitted in the above issue, then answer the issue, 'He would.'

"If, under all the attendant circumstances, you do not so believe, but find that the deceased, in proceeding over the track, as you may find he did, was acting as a person of ordinary prudence would have acted under the same or similar circumstances, then answer the issue, 'He would not.'"

As has been hereinbefore noted, the jury answered said issue: "He would not."

[11] We do not believe the court erred in refusing to substitute the special issue requested by appellant, for that submitted by the court. If the court had submitted the issue as presented by appellant, the jury's finding thereon would only have been of an evidentiary fact and not of an ultimate fact, and deceased not being guilty of contributory negligence as a matter of law, it was necessary for the jury to determine, as a matter of fact, whether deceased was guilty of contributory negligence, and whether same was a proximate cause of his death, and the issue, as presented, not calling for a finding on proximate cause, was properly refused. "The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it." Railway Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Railway Co. v. Rowe, 224 S. W. 932; Railway Co. v. Smithers, 228 S. W. 644. The assignment is overruled.

[12] By its ninth assignment of error, appellant complains that special issue No. 14, as submitted by the court, placed upon appellant a greater burden and higher degree of care than is required by law. We cannot agree to this contention. The assignment is overruled.

The tenth assignment is without merit, and is overruled. If there was any error, it was harmless error.

[13] Appellant contends, in its eleventh assignment of error, that the court erred in not allowing it to prove by its witness Hobgood that he had frequently seen deceased pass over Hardy street at night, and that frequently he was under the influence of whisky. Testimony offered by appellant showed that a flask containing some whisky was found on the street near where deceased was killed, but there was no testimony showing that it belonged to deceased, or in any wise connected him with it. No testimony was given to show that he was or recently had been drinking; but, on the other hand, Frances Noriega testified that immediately after deceased was run over, and while he yet lived, she talked to him, was very close to him, and could have smelled his breath if there had been any odor of whisky on it, and that she did not smell or in any manner detect anything of the kind. We think the offered testimony, the rejection of which is here complained of, was clearly inadmissible. Railway Co. v. Davis, 92 Tex. 372, 48 S. W. 570; Railway Co. v. Johnson, 92 Tex. 380, 48 S. W. 568.

[14] The twelfth assignment of error claims that the verdict is excessive. The verdict and judgment is for $8,000. The deceased was a shoemaker by trade, though at the time working for a restaurant, 39 years of age, industrious by nature, a kind and indulgent husband and father, and the sole support and protection for his wife and two minor children (girls), the eldest of whom, 14 years of age, was at the time of the death of her father going to school and has had to stop by reason of his death. At the time of his death he was making about $32 in money per month working in a restaurant, and his meals and food for his family, the money value of which the evidence did not disclose.

Chief Justice Gaines, in Railway Co. v. McVey, 99 Tex. 32, 87 S. W. 329, says:

"It is, however, settled by our decisions that the damages which may be recovered under the statute are such pecuniary benefits as plaintiff had a reasonable expectation of receiving from deceased, had he lived. City of Galveston v. Barbour, 62 Tex. 172. By pecuniary benefits is meant not only money, but everything that can be valued in money, and includes, in case of a minor child who is suing for the death of a parent, the reasonable value of such nurture, care and education as the child would have received from the deceased parent had such parent lived."

We do not think the verdict is excessive, and therefore the assignment is overruled.

Finding no reversible error in the record, the judgment is affirmed.

HIGHTOWER, C. J. I concur in the opinion affirming the judgment in this case. With reference to the eighth assignment of error, I desire to say that in my opinion the refusal of the trial court to give the special instruction to which that assignment relates was not error, for the reason that such instruction had the effect to take from the jury the issue of proximate cause, involved in the issue of contributory negligence, on the part of the deceased. Under the facts of this case, it was a question of fact for the determination of the jury as to whether the negligence on the part of the deceased, if there was such negligence, as specified in the requested issue, became a proximate cause of the death of the deceased.