**GALVESTON, H. & S. A. RY. CO. et al. v. DUTY. (No. 729–4336.)***

(Commission of Appeals of Texas, Section A. Dec. 10, 1925.)

**1. Railroads** ⚖➙324(1)—**Ordinary care required of one approaching crossing.**

One is charged with duty to exercise ordinary care to discover and avoid danger to himself on his approaching and going onto a railroad crossing.

**2. Negligence** ⚖➙136(9)—**Question for jury.**

In a particular case, not involving violation of statutory law, question of whether ordinary care has been exercised is a question of fact for jury, and does not become a question of law, unless established facts are such that ordinary minds can draw no conclusion therefrom other than that of negligence of party charged with such negligence.

**3. Railroads** ⚖➙350(22)—**Contributory negligence of automobile driver at obscured crossing held for jury.**

In action for injuries sustained by plaintiff when his automobile was struck at obscured railroad crossing, whether plaintiff failed to exercise ordinary care in approaching and going onto crossing, in manner and under circumstances he did, *held* for jury.

**4. Appeal and error** ⚖➙999(3)—**Reviewing tribunal bound by finding of jury acquitting plaintiff of contributory negligence.**

In action for injuries sustained by plaintiff when his automobile was struck at obscured railroad crossing, reviewing tribunal was bound by finding of jury acquitting plaintiff of contributory negligence.

**5. Criminal law** ⚖➙13—**Statutes** ⚖➙64(6)—**Terms of statute prohibiting driving of automobile over obscured railroad crossing at speed greater than 6 miles per hour held void for uncertainty, and render entire statute void.**

The terms of Pen. Code 1925, art. 800 (Acts 1917, c. 207, § 17 [Vernon's Ann. Pen. Code Supp. 1918, art. 820*l*]), prohibiting one from driving an automobile over an obscured railroad crossing at a speed of greater than 6 miles per hour, *held* void for indefiniteness, and,

---

being essential to the enforceability of the statute, render the statute wholly void.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by E. C. Duty against the Galveston, Harrisburg & San Antonio Railway Company and others. Judgment for plaintiff was affirmed (267 S. W. 744), and defendants bring error. Affirmed.

Kemp & Nagle and S. N. Russell, all of El Paso, for plaintiffs in error.

Wallace & Cameron, of El Paso, for defendant in error.

HARVEY, P. J. For convenience the plaintiffs in error, Galveston, Harrisburg & San Antonio Railway Company and J. L. Lancaster and C. L. Wallace, receivers of the Texas Pacific Railway Company, will be designated in this opinion as "appellants," and the defendant in error, E. C. Duty, will be designated as "appellee."

About 9 o'clock on the night of May 18, 1923, while appellee was driving across a public crossing over the railroad track of appellants in the city of El Paso, in a Ford automobile, said automobile was struck by a locomotive of appellants, which was drawing a freight train of 17 cars on such railroad track, resulting in serious and permanent injuries to appellee, to his damage in the sum of $10,000, as found by the jury. Said railroad crossing was located at the point where Copia street, of said city, intersects and crosses said railroad track. Copia street runs north and south, and the railroad track runs east and west. The railroad track is straight and level eastward from such crossing for a distance of a mile or more. There was a city ordinance prohibiting the running of trains within the city limits at a speed greater than 10 miles an hour. The freight train was traveling west within the city limits, and was being negligently run at a speed of 20 miles an hour while approaching and going over said crossing. The operatives of said freight train negligently failed to sound the whistle on the locomotive at a distance of 80 rods from the crossing, and negligently failed to ring the bell at any time while approaching said crossing while within 80 rods thereof, and while passing over such crossing. The engine was equipped with an electric headlight, which was burning. Appellee was traveling northward on Copia Street in his automobile at a rate of speed of 12 or 15 miles an hour, which was an ordinary speed, and continued to maintain such speed until the collision occurred. On the south side of the railroad track, Copia street, which is 40 feet wide from curb to curb, had obstructions on both sides thereof along its route southward from the crossing; such obstructions beginning at a point about 42 feet south of the crossing, and extending southward along both sides of the street a

long distance. Such obstructions on the east side of the street consisted of houses, wall fences, and other objects, which had the effect of totally obstructing the view of appellee and preventing him from seeing eastward along the railroad track until he had reached a point 91 feet south of the said track, and from this point the view eastward was partially obstructed by a wall fence and telegraph poles up to a distance of 42 feet south of the crossing. On the west side of the street the obstructions ran up to and abutted on the railroad right of way, and were such as to obstruct appellee's view in that direction until he reached the line of the right of way.

The appellee was familiar with such crossing and its surroundings, having gone over same many times before. An eastbound passenger train usually passed over such crossing every night at about the time that this accident occurred, which fact was known to appellee at the time. As he approached the crossing on the occasion in question, he had such fact in mind, and as soon as he reached a point where his line of vision was not obstructed he looked westward for the purpose of discovering whether such passenger train was approaching from that direction. The evidence does not disclose the conditions which, at the time, surrounded the railroad track in its westward course from Copia street. Hence the nature and extent of appellee's view in that direction at the time he was looking for the expected passenger train cannot be stated. As soon as appellee had satisfied himself that the passenger train from the west was not approaching, he shifted his view to the east, and saw the freight train bearing down upon him, and then the collision occurred. After discovering the approach of the freight train, the appellee had no time to do anything to avert the collision which followed. At all times while appellee was approaching the crossing, he was listening for trains on the railroad track, but heard nothing to indicate the approach of this freight train. He also looked for approaching trains as soon as he had opportunity to do so, as above stated. He did not see the approaching freight train, nor did he see anything to indicate its approach, although he was on the lookout for approaching trains.

The headlight on the locomotive was burning, but there is no evidence showing how far in advance of the locomotive such headlight cast its reflections or rays of light. The engineer testified that the headlight was burning, but also said that "those headlights are different, some are brighter than others," which is the substance of all the testimony in the case relating to the headlight. It may also be stated that the undisputed testimony shows that, when appellee had reached a point 42 feet south of the crossing, the view eastward was wholly unobstructed, and appellee could have plainly seen the approach-

ing freight train, if he had looked in that direction, instead of looking westward as he did.

The jury found that appellants were guilty of negligence in the particulars hereinabove mentioned, and that such negligence was the proximate cause of appellee's injuries. Under appropriate instructions, the jury also found that appellee was exercising ordinary care in approaching and going onto the railroad crossing as he did, and that he was not guilty of contributory negligence in the premises.

[1, 2] The appellants contend that under the facts of this case the appellee was guilty of contributory negligence as a matter of law, which proximately caused or contributed to his injuries. In this contention we cannot concur. We fully recognize the well-established rule that appellee was charged with the duty to exercise ordinary care to discover and avoid the danger to himself upon his approaching and going onto the railroad crossing. But in a particular case, not involving the violation of statutory law, the question of whether or not ordinary care has been exercised is a question of fact to be determined by the jury, and does not become a question of law unless the established facts are such that ordinary minds can draw no conclusion therefrom, other than that of negligence on the part of the party charged with such negligence.

[3, 4] We are of opinion that the facts of this case do not show, as a matter of law, that appellee failed to exercise ordinary care in approaching and going onto the crossing in the manner and under the circumstances he did; and, the jury having acquitted him of contributory negligence in this respect, this court is bound by such finding.

[5] As further ground for contributory negligence on the part of appellee, the appellant invokes the provisions of the statute appearing as article 800 of the Penal Code in the Revised Criminal Statutes of 1925 (section 17 of chapter 207 of the Acts of 1917 [Vernon's Ann. Pen. Code 1918, art. 820l]). The said statute reads as follows:

"Art. 800. *Approaching Railroad Crossings.*— Any person driving a motor vehicle or motorcycle, when approaching the intersection of a public street or highway with the tracks of a steam railroad or interurban railroad, where such street or highway crosses such track or tracks at grade, and where the view of the said crossing is obscured, either wholly or partially, shall before attempting to make the said cross-ing, and at some point not nearer than thirty feet of the said track, reduce the speed of his motor vehicle or motorcycle to a speed not exceeding six miles per hour before making the said crossing, unless there are flagmen or gates at such crossing and such flagmen or gates show that the way is clear and safe to cross such track or tracks. This article shall not apply to persons crossing interurban or street railway tracks within the limits of incorporated cities or towns. Whoever violates any provision of this article shall be fined not exceeding one hundred dollars."

The above statute fails to define with sufficient certainty the duty sought to be imposed or the acts sought to be prohibited. In the first place, the point where a person approaching a railroad crossing shall reduce the speed of his vehicle to 6 miles per hour is no further defined than that it shall be "not nearer than thirty feet from said track." Beyond a point 30 feet from the track, the space within which such person shall reduce the speed of the vehicle is unlimited. In the second place, the condition under which such a person is required to so reduce the speed of his vehicle are not described with sufficient certainty. The statute says that, unless there be a gate or flagman at the crossing, such conditions exist "where the view of said crossing is obscured either wholly or partially." But this language, when considered in connection with the context, is of such indefinite import as to shroud the meaning in serious doubt. So uncertain is the meaning of the statute, in the particulars mentioned, that no person can determine where or under what conditions he is required to reduce the speed of the vehicle he is driving. These parts of the statute are essential to the existence and enforceability of every other part of such statute. The vague and uncertain meaning of the parts of such statute which we have pointed out is such as to render said statute wholly void. Graham v. Hines (Tex. Civ. App.) 240 S. W. 1015; Griffin v. State, 86 Tex. Cr. R. 498, 218 S. W. 494.

We have carefully considered all other questions presented in this appeal, and find no merit in any of them. We therefore recommend that the judgment of the trial court and that of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.