**ORIENTAL OIL CO. v. BROWN et al.**

**No. 3123.**

Court of Civil Appeals of Texas. El Paso.
Feb. 21, 1935.

Rehearing Denied March 14, 1935.

H. A. Bateman and Burgess, Chrestman & Brundidge, all of Dallas, for appellant.

Touchstone, Wight, Gormley & Price, of Dallas, for intervener Standard Accident Ins. Co.

White & Yarborough, of Dallas, for appellee Brown.

PELPHREY, Chief Justice.

On or about March 7, 1932, Jim Brown was operating a truck on the Eagle Ford road, in Dallas county, Tex., and going in a westerly direction. H. T. Gumm was operating a truck for appellant and going in the same direction. The truck Brown was operating was behind appellant's truck. Appellant's No. 2 Refinery is located on said road on the south side. On the day in question appellant's driver attempted to turn from the right side of the road into the gate leading to appellant's refinery, and while so doing there was a collision between the two trucks in which Brown claims to have been injured.

On February 28, 1933, Brown filed this suit against appellant, seeking a recovery for such injuries. His petition contains allegations of several acts of negligence on the part of appellant's driver. Appellant demurred generally and specially, and pleaded contributory negligence on the part of Brown.

On April 29, 1933, Standard Accident Insurance Company intervened, alleging that it was subrogated to the rights of Brown to the extent of certain compensation insurance benefits expended by it in his behalf.

In response to special issues the jury found that Brown sustained injuries as a result of the collision; that appellant's driver was not negligent with respect to the speed at which he was driving its truck; that the driver suddenly turned the truck to the left; that such sudden turning was negligence; that it was a proximate cause of Brown's injuries; that the driver did not fail to have the truck under control; that he did not fail to operate the truck on the right-hand side of the highway, considering the direction in which he was and had previously moved; that he failed to keep a proper lookout; that such failure was negligence and a proximate cause of the injuries to Brown; that he failed to apply his brakes at the time and on the occasion in question; that such failure was not negligence; that he changed the course of the truck and failed to see that there was sufficient space for such movement to be made in safety before so doing; that the operation of the truck driven by Brown would be reasonably affected by such changing of course; that appellant's driver failed to give visible or audible signal of his intention to change his course; that such failure was a proximate cause of the injuries; that the accident was not unavoidable; that Brown did not fail to give a warning of his intention to pass appellant's truck; that Brown failed to exercise ordinary care as to the speed at which he was driving; that said failure was not a proximate cause of the collision; that Brown was driving at a rate of speed in excess of 20 miles per hour; that the driving of the truck at such speed proximately caused, or contrib-

uted to cause, the injuries to Brown; that Brown failed to slow down the truck he was driving prior to the collision; that such failure was not negligence; that he did not fail to apply his brakes; that he did not fail to have control of the truck; that his failure to stop the truck was not negligence; that he did not fail to keep a proper lookout for the movements of appellant's truck at and immediately prior to the time of the collision; that the Standard Accident Insurance Company expended $2,195.05, incident to the claim of Brown under its obligation as insurance carrier for Sims Oil Company; and that Brown's damages amounted to $7,670.

Judgment in favor of Brown for $5,474.95 and for the Standard Accident Insurance Company for $2,195 was rendered, and this appeal followed.

## Opinion.

Appellant's first three propositions are to the effect that, the undisputed evidence showing the collision to have occurred in a "village," as that term is used in article 827a, § 8, Vernon's Ann. P. C., and the jury having found that Brown was operating the truck he was driving at a rate of speed in excess of 20 miles per hour, and that the driving of the truck at such rate of speed proximately caused, or contributed to cause, the injuries sustained by Brown, he was guilty of negligence per se and was precluded by reason thereof from recovering any amount. Appellees counter with the assertions that said article is too vague, indefinite, and general to prescribe a rule of conduct, and that, if it be valid, the testimony being uncertain as to whether the collision occurred within a town or village, appellant should have requested the submission of an issue on such question, and, having so failed, it waived any defense based upon the theory that the driving of Brown's truck at a rate of speed in excess of 20 miles per hour constituted negligence per se.

Appellant admits that the statute in question is too vague and indefinite to be enforceable as a criminal statute, but contends that it is sufficiently certain and definite to furnish a rule of civil conduct, so that its violation constitutes negligence per se.

In support of its position, appellant cites Solan & Billings v. Pasche (Tex. Civ. App.) 153 S. W. 672, 674 (writ refused); San Antonio Public Service Co. v. Murray (Tex. Civ. App.) 59 S.W.(2d) 851; Houston & T. C. Railway Co. v. Stevenson (Tex. Com. App.) 29 S.W.(2d) 995; West Texas Coaches v. Madi (Tex. Com. App.) 26 S.W.(2d) 199; 49 Corpus Juris, 631.

Appellees, on the other hand, refer us to Ex parte Slaughter, 92 Tex. Cr. R. 212, 243 S. W. 478, 479, 26 A. L. R. 891; Abbott v. Andrews (Tex. Com. App.) 45 S.W.(2d) 568, 569; International & G. N. Railway Co. v. Mallard (Tex. Com. App.) 277 S. W. 1051, 1052; Sanders v. Lowrimore (Tex. Civ. App.) 73 S.W.(2d) 148.

In Solan & Billings, the court held a statute prohibiting the driving of motor vehicles "at any speed greater than is reasonable and proper, having regard to the traffic and use of the public road, street or driveway by others, or so as to endanger the life or limb of any person thereon," sufficiently definite as a remedial statute imposing a civil duty so as to render its violation negligence per se. Writ of error was refused by the Supreme Court.

In West Texas Coaches v. Madi, Section A of the Commission of Appeals overruled an assignment attacking a statute fixing a punishment for passing a motor or other vehicle, person, or thing on the highway at such a rate of speed as to endanger the life or limb of any person or the safety of any property. Solan & Billings v. Pasche was cited by the court, but the court further held that there were other grounds of negligence established in the case, and that, if there had been error in the submission of the issue, it was harmless and not ground for reversal.

The Court of Criminal Appeals in Ladd v. State, 115 Tex. Cr. R. 355, 27 S.W.(2d) 1098, 1100, held the same statute obnoxious for uncertainty, saying: "It provides no standard by which the operator of any motor vehicle could determine whether the rate of speed at which he was operating his car was lawful or otherwise. The test of danger to the life or limb of any person, or safety of any property, is not one which can be made apparent to the operator of the vehicle by the mere question of possible danger to persons or property."

The definiteness of article 799, Penal Code, was under consideration in Houston & T. C. Railway Co. v. Stevenson. The Court of Civil Appeals, 19 S.W.(2d) 207, held it too uncertain and indefinite to serve as a rule of civil conduct, but the Commission of Appeals, supra, disagreed with such holding, and, after a lengthy discussion of the authorities, decided that the term "adequate brakes kept in good working order" could be easily understood by those who were to be governed by the provisions of the statute.

In San Antonio Public Service Co. v. Murray an ordinance of the city of San Antonio regulating the speed of electric street cars was under consideration. The ordinance was to the effect that no electric street car should be operated at a greater speed than was reasonable and proper, having regard to the traffic and use of the streets by others, or so as to endanger the life or limb of any person thereon, and concluded by fixing a penalty for operating a street car within the circle of one-half mile from the intersection of St. Mary's and College street at more then ten miles per hour. There was an objection to the introduction of the ordinance in evidence. The court held the objection untenable on the ground that, the latter portion being sufficiently definite and admissible, overruling an objection to the whole was not error.

The first case cited by appellees is one by the Court of Criminal Appeals, Ex parte Slaughter, and involved article 820o, Vernon's Ann. Penal Code Supp. 1918. That article prohibited the operation of motor vehicles on the highway "where the territory contiguous thereto is closely built up." The court, in holding it unenforceable, said: " 'Closely built up,' seems to us unavoidably open to the objection that it is of such doubtful construction and is so indefinite as to make impossible any standard of construction which might be applied to his own acts by the operator of a motor vehicle, or to such acts by a judge or jury called upon to decide whether such operator has offended against this law." Again the court said: "How can one operating a motorcar know or determine that that part of the highway on which he is is thickly built up? Without some judicial or legislative definition, construction, or interpretation of the expression 'thickly built up,' it is clear that such operator cannot know or answer to himself the question."

In International & G. N. Railway Co. v. Mallard, supra, it conclusively appeared that appellee had driven onto the railway crossing at a speed of more than 6 miles per hour. Appellant had pleaded contributory negligence on the part of appellee in going upon the crossing in violation of a statute requiring a person approaching a railroad crossing at a grade, and where the view of the crossing is obscured, either wholly or partially, without reducing his speed to not to exceed 6 miles per hour, and contended that a violation of such statute was such negligence as would preclude him from recovering. Section A of the Commission of Appeals, in discussing the statute, had this to say: "It

lacks that degree of certainty essential to a law. As applicable to the driver of a car as he approaches a railroad crossing, it affords only a subject to debate, in his mind, as to whether the contour, et cetera, of the landscape is such as to require him to change his plan."

In Galveston, H. & S. A. Railway Co. v. Duty (Tex. Com. App.) 277 S. W. 1057, 1059, Section A, when again called upon to construe this article, said: "In the first place, the point where a person approaches a railroad crossing shall reduce the speed of his vehicle to 6 miles per hour is no further defined than that it shall be 'not nearer than thirty feet from said track.' Beyond a point 30 feet from the track, the space within which such person shall reduce the speed of the vehicle is unlimited. * * * So uncertain is the meaning of the statute, in the particulars mentioned, that no person can determine where or under what conditions he is required to reduce the speed of the vehicle he is driving."

This article (820 l) was also held void for uncertainty by the Court of Civil Appeals for the First District in Graham v. Hines, Agent et al., 240 S. W. 1015 (writ refused).

Article 801 of the Penal Code requires the driver of a slowly moving vehicle to keep such vehicle as closely as possible to the right-hand boundary of the highway, allowing more swiftly moving vehicles reasonably free passage to the left. In Abbott v. Andrews, supra, the court refused to submit certain requested issues based upon this statute. The contention made in the appellate court in that case was that a violation of that statute constituted negligence per se. Section A of the Commission of Appeals, in holding it invalid, said: "In reading the statute, the question at once arises as to what rate of speed must a vehicle be moving in order to render the driver subject to the requirements there provided. The only guide which the statute furnishes in this respect is 'any vehicle moving slowly.' To all legal intents and purposes this is equivalent to no guide at all, since every driver of a vehicle—whether such vehicle be horse drawn or motor driven—would be put to the necessity of deciding, at his peril, what rate of speed the statute regards as slow. Manifestly, the statute, in the respect that it undertakes to define the rate of speed which calls for compliance with the prescribed requirements, is too indefinite and uncertain to impose upon any person the duty to comply with such requirements."

The Eastland Court of Civil Appeals (Sanders v. Lowrimore, supra) held a statute which requires a driver of a motor vehicle moving along a portion of the highway where a curvature prevents a clear view ahead for a distance of 100 yards to have the vehicle under control invalid for indefiniteness and uncertainty.

We have quoted from and explained the facts involved in the several cases at quite some length for the purpose of showing what appears to us to be a lack of uniformity in the decisions as to when statutes are void for uncertainty. The portions of the statute here involved read: "It shall be unlawful for any person to operate or drive any motor or other vehicle upon the public highways of Texas * * * within or through any town or village not incorporated, at a greater rate of speed than twenty (20) miles per hour. * * * "

█ After a careful reading of the above-mentioned decisions, as well as many others, we have reached the conclusion that the above provision is too uncertain and indefinite to apprise the driver of a vehicle when he should bring the speed thereof within the 20-mile limit.

The difficulty arises from the fact that no one can say just where the boundaries of an unincorporated town or village are, and each driver would, perforce, be left to the use of his judgment as to when he was within such town or village. The same would be true as he was leaving.

If we concede, as asserted by appellant in its reply to appellee's brief, that the collision here occurred right in the heart of a well-defined, well-established village, it would not change the disposition of this case. We are concerned with the question of whether or not a violation of the portion of the statute above quoted will render a person so violating guilty of negligence per se. If the statute be, as we believe, too indefinite and uncertain to form the basis of a rule of civil conduct, then negligence will not follow as a matter of law from its violation. The propositions must be overruled.

█ The court's refusal to submit its requested issue No. 26 is made the basis of appellant's first assignment of error and fourth proposition. It reads: "Do you find from a preponderance of the evidence that the plaintiff, Jim Brown, failed to keep a proper lookout for the turning of defendant's truck ahead of him on the occasion in question?"

Issue No. 33, as submitted by the court, reads: "Do you find from a preponderance of the evidence that the plaintiff, Jim Brown, failed to keep a proper lookout for the movements of defendant's truck at and immediately prior to the time of the collision in question?"

Appellant here asserts that the phraseology used in issue No. 33 was vague, general, and indefinite, and that it was entitled to have the issue submitted in definite and concise language such as that used in the requested issue. Under this proposition, the argument is advanced that appellant did not undertake to prove that Brown failed to keep a proper lookout for all the movements of its truck at and immediately prior to the time of the collision in question, but only that he failed to keep a proper lookout for the turning of the truck to the left; and that the jury may have had the conviction that he was keeping a proper lookout for the turning of appellant's truck to the right, but not have been willing to find that he was keeping a lookout for a left turn. We fail to see how appellant could have been harmed by the issue as submitted. If we concede that the issue as submitted required the jury to find that Brown had kept a lookout for all the movements of appellant's truck, when, as argued by appellant, he was obliged to keep a lookout only for a left turn, then a greater burden was placed upon him than should have been, and, if any one is entitled to complain, he would be that one.

We think the issue, as submitted, was a correct submission of the issue of proper lookout and that it fully covered the question. The assignment is accordingly overruled.

█ Other requested issues were:

"No. 15: Do you find from a preponderance of the evidence that, on the occasion in question, the plaintiff, Jim Brown, knew that the driver of defendant's truck was preparing to turn to the left into defendant's place of business, in sufficient time for the plaintiff to have avoided the collision in question?"

"No. 16: Do you find from a preponderance of the evidence that on the occasion in question, and under all the circumstances in evidence before you, the plaintiff, Jim Brown, reasonably ought to have known that the driver of the defendant's truck was preparing to turn to the left into the defendant's place of business in sufficient time for plaintiff to have avoided the collision in question?"

"No. 17: Do you find from a preponderance of the evidence that, despite such knowl-

edge, if any you have found in answer to either of the two preceding special issues, the plaintiff, Jim Brown, drove the truck in which he was riding into and against the defendant's truck?"

. The next two issues requested inquired whether the driving of Brown's truck into that of appellant was negligence and proximately caused, or contributed to cause, the injuries sustained by Brown.

Issue No. 31, as it appears in court's charge, reads: "Do you find from a preponderance of the evidence that the failure of plaintiff, Jim Brown, at the time and on the occasion in question to stop his said truck prior to the collision was negligence?"

Appellant's brief contains an extended argument why the court's refusal to submit the issues requested constitutes reversible error, and we are in agreement with the proposition that all defenses pleaded and proved should be submitted for the jury's determination. In the case at bar, however, the ultimate question embodied in issues 15, 16, 17, and 18 was as to whether Brown, under all the facts and circumstances, was guilty of negligence in failing to stop the truck he was driving before it collided with appellant's truck. Whatever facts and circumstances existed to make it his duty to stop, whether it be the fact that he had seen, as he testified, appellant's name on the truck, that nobody but appellant's trucks went "in that way," or that he saw the left hand of appellant's driver extended, were pertinent to the inquiry as to whether his failure to stop was negligence. It being admitted that he did not stop, then the issue submitted by the court was the ultimate fact to be determined, and was an entirely proper way to present the question to the jury.

Having found no reversible error, the judgment of the trial court is affirmed.

### On Motion for Rehearing.

Appellant has filed both an original and an amended motion for rehearing, and in each has questioned our statement that it had admitted the statute in question to be too vague and indefinite to be enforceable as a criminal statute, and has requested that such statement be withdrawn from the opinion.

The statement appearing in the opinion leads to the conclusion that appellant had specifically admitted the invalidity of the statute in so far as its criminal enforcement was concerned, and such admission was not in fact made. The arguments appearing, however, in plaintiffs' brief, together with its discussion of the various authorities relative to similar statutes, inevitably lead to the conclusion that it was not contending that the statute was enforceable as a criminal statute, but merely that it was sufficient to afford a rule of civil conduct.

The matters presented in the motion and as amended are not new, and with the above explanation they are overruled.